Lewis Thomas et al., Respondents, v Seward Hanmer et al., Appellants.

Fourth Department, June 4, 1985

### APPEARANCES OF COUNSEL

*Gough, Skipworth, Summers, Eves & Trevett* (*Thomas E. Lenweaver* of counsel), for appellants.

*Johnson, Mullan, Brundage & Keigher, P.C.* (*Samuel G. Brundage* of counsel), for respondents.

### OPINION OF THE COURT

Green, J.

We must decide whether the availability of relief in this negligence action is governed by the law of the State of New York which permits a plaintiff to recover for pain and suffering for "serious injury" (Insurance Law § 5104 [a]), or by the law of the Province of Quebec, Canada, which restricts recovery to economic loss (Quebec Rev Stats 1977, ch 68; Automobile Insurance Act §§ 4, 44). Stated another way, should the parties be restricted to the traditional rule of *lex loci delicti* or the more just, fair and practical result that may be achieved by giving controlling effect to the law of the jurisdiction which has the greatest interest in the specific issues raised in this litigation?

This requires us to apply the "center of gravity" or "grouping of contacts" test first adopted in tort cases in *Babcock v Jackson* (12 NY2d 473). We agree with Special Term that New York has the dominant contacts and superior interest for application of its law to the following uncomplicated and undisputed facts.

On October 12, 1979 plaintiff Anne D. Thomas drove her car from her residence in Fairport, New York, to Pointe Claire, Quebec, Canada, to deliver various items of personal property to her son, a student at McGill University. On the same day, defendant Seward Hanmer, a resident of Massena, New York, was driving his wife's automobile to Montreal, Quebec, Canada, to board a train destined for Florida. The Thomas vehicle was struck in the rear by the Hanmer vehicle as Mrs. Thomas was stopped at a controlled intersection in Pointe Claire. Both vehicles were insured and registered in New York State.

Plaintiffs thereafter commenced suit against defendants to recover for personal injuries, damage to their car and their son's property, and for damages suffered derivatively by Mr. Thomas. Plaintiffs selected Monroe County as the venue of the action based on their residence there. Defendants moved to dismiss the complaint on the ground that the law of Quebec, Canada, barred the plaintiffs from recovering damages for pain and suffering resulting from injuries sustained in the automobile accident. Special Term denied the motion and we affirm.

At the time of the accident, the Automobile Insurance Act of Quebec provided for compensation to a nonresident victim but with the following limitations: "the pecuniary compensations or benefits provided for the compensation of such injury by the Workmen's Compensation Act * * * or by the Crime Victims Compensation Act * * * are in the place and stead of all rights, recourses and rights of action of any one by reason of such bodily injury and no action in that respect shall be admitted before any court of justice" (Quebec Rev Stats, 1977, ch 68, as adding Automobile Insurance Act § 4). A victim of an automobile accident occurring in Quebec may not waive any of the rights provided by the act (Quebec Rev Stats, 1977, ch 68, as adding Automobile Insurance Act § 14). Under New York law, however, plaintiff is entitled to recover for pain and suffering provided she can establish that she suffered a "serious injury" (*see,* Insurance Law § 5104 [a]). The question then is whether Quebec law or New York law applies.

In *Babcock v Jackson* (12 NY2d 473, *supra*), a New York guest passenger commenced suit against his New York host-driver in New York Supreme Court to recover damages for personal

injuries suffered in Ontario, Canada. The accident occurred while the parties (friends residing in Rochester, N. Y.) were in Ontario for a weekend vacation. The Ontario guest statute in effect at the time absolved the host-driver of all liability, while New York law treated the host-guest situation like any other motor vehicle negligence case. The Court of Appeals framed the issue carefully: "[s]hall the law of the place of the tort *invariably* govern the availability of relief for the tort or shall the applicable choice of law rule also reflect a consideration of other factors which are relevant to the purposes served by the enforcement or denial of the remedy?" (12 NY2d 473, 477, *supra;* emphasis in original.) The court rejected the traditional *lex loci delicti* rule and held that in tort cases, as in contract cases, "[j]ustice, fairness and 'the best practical result' * * * may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation" (*Babcock v Jackson, supra,* p 481). The *Babcock* court concluded that the concern of New York was unquestionably greater and more direct because New York was where both the host and guest resided, where the car was garaged, licensed and insured, and where the weekend journey began and was to end, but for the "purely adventitious circumstance" that the accident occurred in Ontario (*Babcock v Jackson, supra,* p 482).

Turning to an examination of the relevant policies and interests of each jurisdiction, the *Babcock* court found no reason to depart from New York's policy of requiring a tort-feasor to compensate his guest for injuries caused by his negligence simply because an accident, solely affecting New York residents and arising out of the operation of a New York based automobile, happened beyond the State's borders. The court found that Ontario, in contrast, had no conceivable interest in denying such a remedy in a suit between New York litigants for injuries suffered in Ontario because of conduct tortious under Ontario law. Since the apparent goal of Ontario's guest-statute was to prevent fraudulent claims by passengers in collusion with drivers against Ontario insurance companies, the court reasoned that "[w]hether New York defendants are imposed upon or their insurers defrauded by a New York plaintiff is scarcely a valid legislative concern of Ontario simply because the accident occurred there, any more so than if the accident had happened in some other jurisdiction" (*Babcock v Jackson, supra,* p 483).

Defendants argue that the *Babcock* test does not compel the conclusion that New York law governs the instant case because in *Babcock* Ontario had a guest statute which New York did not,

while here each jurisdiction has a no-fault law. Defendants submit that here New York has no interest paramount to that of Quebec and that Quebec has a significant interest in assuring that its laws of the road are obeyed. We are not persuaded by this argument.

The *Babcock* rationale, developed from the law of contracts (*Auten v Auten,* 308 NY 155), has not been confined to guest statute cases (*Schultz v Boy Scouts,* 65 NY2d 189). The main causes of dissatisfaction that led to overthrow of the *lex loci delicti* rule in *Babcock* (*supra*) were found no less compelling in other tort contexts. Indeed, shortly after *Babcock,* the "center of gravity" or "grouping of contacts" theory was applied to conflicts in tort cases concerning the measure of damages in wrongful death actions (*Miller v Miller,* 22 NY2d 12), the availability of direct actions against liability insurers (*Oltarsh v Aetna Ins. Co.,* 15 NY2d 111) and the vicarious liability of an automobile owner for a driver's negligence (*Farber v Smolack,* 20 NY2d 198; *cf. Croft v National Car Rental,* 56 NY2d 989). The court specifically noted in *Farber* that it saw "no logical basis to distinguish" between the vicarious liability and host-guest issues (*Farber v Smolack, supra,* p 204).

In applying the *Babcock* test " 'it is necessary first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a * * * superior interest in having its policy or law applied' " (*Tooker v Lopez,* 24 NY2d 569, 574, quoting from *Dym v Gordon,* 16 NY2d 120, 124; *Beasock v Dioguardi Enters.,* 100 AD2d 50, 52). Here, the specific issue involved is the right of plaintiff to recover for noneconomic loss as a result of the serious injuries she allegedly suffered in an automobile accident in Quebec.* New York law permits such recovery if plaintiff can meet the threshold, an issue we are not concerned with on this pretrial motion. Quebec prevents such recovery no matter how serious the injury. On the facts here presented, Quebec has no significant interest in denying plaintiff the right to recover damages for serious injuries.

* Defendants argue that the central issue is the standard of care by which defendant's conduct will be measured and that Quebec has a superior interest in assuring that its "rules of the road" are obeyed. The two statutes or policies in conflict, however, involve the remedies available to plaintiff for her injuries. If a conflict between the standard of care of Quebec and New York arises at trial, we note that the *Babcock* decision gives implicit approval to the process of applying the laws of different jurisdictions in the same case depending upon the specific issues involved (*see, McCarthy v Coldway Food Express Co.,* 90 AD2d 459, 460).

Although the record does not indicate the purpose of Quebec's no-fault law, we assume that it is similar to the purpose of the New York law, i.e., to assure prompt compensation of accident victims for economic loss without regard to fault; to eliminate the vast majority of auto accident negligence suits; and to provide substantial insurance premium savings to motorists (*see,* 1973 NY Legis Ann, at 298). New York's policy toward automobile accident victims, however, finds only partial expression in its no-fault law. In upholding the constitutionality of the New York No-Fault Law, the Court of Appeals emphasized that the law only partially abolished the common-law right to sue in tort and that in cases of serious injury, a plaintiff retained the right to recover for pain and suffering (*see, Montgomery v Daniels,* 38 NY2d 41). The New York law, therefore, seeks to protect the economic integrity of New York residents including the plaintiffs in the instant case.

An examination of the contacts of New York with this legislation vis-à-vis Quebec clearly reveals that New York has a superior interest in having its law applied. Both plaintiffs and defendants are domiciled in New York, both cars are registered and insured in New York, and both parties began their trips in New York and intended to return there after a short stay in Canada. New York, as the domicile of the plaintiff, has a significant interest in assuring that she and her family are adequately compensated for their injuries (*see, Miller v Miller,* 22 NY2d 12, 18, *supra; Rakaric v Croatian Cultural Club,* 76 AD2d 619, 632). As in *Babcock* (*supra*), Canada has no contact with this case except for the "purely adventitious circumstance" that the accident occurred in Quebec (12 NY2d 473, 482, *supra*). Quebec, therefore, has no conceivable interest in denying plaintiff the right to recover for pain and suffering.

Since both cars involved in the accident were insured in New York there is no risk of higher insurance premium rates for Quebec drivers. Moreover, since there is no territorial limitation (other than North America) restricting liability coverage in the standard New York insurance policy (*see,* Vehicle and Traffic Law § 311 [4]) presumably the premiums charged by the State regulated insurance companies take into consideration the possibility that accidents will occur to New York residents traveling out of State (*see, Macey v Rozbicki,* 18 NY2d 289 [Keating, J., concurring]). Indeed, to the extent that the importance of liability insurance turns on the nonrecovery jurisdiction's interest in keeping premium levels down, that interest has been held to be insignificant in application of the *Babcock* test (*see, Rakaric v Croatian Cultural Club,* 76 AD2d 619, *supra*).

We recognize that the grouping of contacts test has not been free of criticism (*see, e.g.,* Brilmayer, *Interest Analysis and the Myth of Legislative Intent,* 78 Mich L Rev 392; Ely, *Choice of Law and the State's Interest in Protecting Its Own,* 23 Wm & Mary L Rev 173). There seems to be general agreement, however, that "[t]he one incontestably valuable contribution of the choice-of-law revolution in the tort conflicts field is the unanimous line of decisions applying common-domicile rather than locus law in cases exhibiting the basic *Babcock v. Jackson* affiliation pattern" (Korn, *The Choice-of-Law Revolution: A Critique,* 83 Col L Rev 772, 799). The most significant contact in New York with this litigation, therefore, is that all parties were residents of New York at the time of the accident.

The result we reach here is consistent with the recent analysis of a conflict of laws in *Schultz v Boy Scouts* (65 NY2d 189, *supra*). There, plaintiffs instituted an action to recover damages for personal injuries they and their sons suffered because the boys were sexually abused by defendant and for damages sustained as a result of the wrongful death of one of their sons who committed suicide. The primary defendant was the boys' school teacher and leader of their Boy Scout troop. Plaintiffs alleged that the sexual abuse occurred while defendant was supervising a Boy Scout camping trip in upstate New York. Plaintiffs and defendant Boy Scouts of America were domiciliaries of New Jersey.

A choice of law issue was presented because New Jersey recognizes the doctrine of charitable immunity, but New York does not (*see, Bing v Thunig,* 2 NY2d 656, 667). Defendants argued that New Jersey law should govern and the court agreed. The court relied heavily on the parties' common domicile and the fact that since the rule in conflict was loss-allocating rather than conduct-regulating, New York had no significant interest in applying its own law to the dispute. The same can be said here about Quebec's interest in this litigation because both parties are domiciliaries of New York.

Had plaintiffs or defendants been Quebec residents we may have reached a different result. For example, in *Blais v Deyo* (92 AD2d 998, *affd* 60 NY2d 679), upon which defendants here rely, plaintiffs were Quebec residents who were injured in an automobile accident in Quebec. Plaintiffs brought an action in New York charging the defendant, a New York resident, with negligence for improperly maintaining his car and permitting an inexperienced driver to operate it. Although the court dismissed plaintiffs' complaint based on forum non conveniens, it discussed the choice of law issue and concluded that New York's

policy of affording full recovery to negligence victims would not be frustrated by limiting Quebec plaintiffs to the recovery prescribed by Quebec law. Thus, unlike the instant case where plaintiffs and defendants have common domicile in New York, *Blais* was a split domicile case in which the court applied the rule of *lex loci delicti* because plaintiffs did not establish that displacement of that rule would advance relevant substantive law purposes (*see, Neumeier v Kuehner,* 31 NY2d 121).

On this record, we conclude that New York has the most significant contacts with this litigation and that Quebec has no interest in denying plaintiff the right to recover for pain and suffering if she can show that she suffered a serious injury. Thus, the just, fair and practical result of the application of the *Babcock* test is that New York law should govern this action. Accordingly, the order denying defendant's motion to dismiss plaintiffs' complaint should be affirmed.

CALLAHAN, J. P., BOOMER, O'DONNELL and PINE, JJ., concur.

Order unanimously affirmed, with costs.