**Albert REISCH, et al.**

v.

**James D. McGUIGAN, et al.**

**Civ. A. No. 85–3735–WF.**

United States District Court,
D. Massachusetts.

Aug. 10, 1990.

---

David G. Hanrahan, Gilman, McLaughlin & Hanrahan, Boston, Mass., for plaintiffs.

Paul J. Gillespie, Driscoll, Gillespie & Stanton, Lynnfield, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

This case arises out of an automobile accident occurring October 4, 1984 in Quebec, Canada. Defendants, who are a Massachusetts resident and corporation, have moved for summary judgment on grounds that the Quebec Automobile Insurance Act (the "Act") provides the exclusive remedy for plaintiffs' injury. For the reasons stated below, the court holds that Massachusetts law applies to this suit and that the Act does not bar plaintiffs' action in this court.

## I. FACTS

The following facts are not in dispute. Plaintiffs Scott Reisch and his parents Albert and Pamela Reisch are all residents of New Jersey. Defendant James McGuigan is a resident of Massachusetts. Defendant W.P. Enterprises, Inc., d/b/a Substitute Rent-A-Car ("Substitute"), is a Massachusetts corporation doing business in Massachusetts. Complaint at ¶¶ 1–5 (October 4, 1985).

On October 6, 1984, Scott Reisch was picked up by McGuigan at Logan Airport in a car owned and rented by Substitute. Stipulation of Facts at ¶ 1 (September 11, 1986) (hereinafter "Stip."). Reisch and McGuigan had previously met when double-dating with their girlfriends, who were roommates at a college in Massachusetts. Defendants' Memorandum in Support of Their Motion for Summary Judgment at Ex. 2, p. 10 (Deposition of Scott Reisch) (November 26, 1986) (hereinafter "Def. Mem."). Reisch was not a resident of or student in Massachusetts. *Id.* at pp. 10–11. Reisch and McGuigan proceeded to drive to Canada, where McGuigan was going to visit his relatives. While in the province of Quebec and while McGuigan was driving, the vehicle left the road and rolled down an embankment. Stip. at ¶ 2–4. Reisch was thrown from the vehicle and seriously injured. Reisch has incurred over $60,000 in medical expenses as a result of the accident, suffers permanent partial paralysis of his left shoulder and arm, and has sustained some memory loss. *Id.* at ¶ 6.

On October 4, 1985, plaintiffs filed the instant action in this court, alleging negligence and loss of affection. On October 28, 1986, defendants moved for summary judgment on the ground that plaintiffs were restricted to recovery under the Quebec Automobile Insurance Act. Plaintiffs opposed. On October 7, 1987, Reisch filed a claim for compensation under the Quebec Automobile Insurance Act, a comprehensive no-fault scheme whose provisions will be described in greater detail *infra*. Affidavit of David Hanrahan at ¶ 2(a) (November 1, 1989). Reisch has received $30,-323.44 (US) in compensation for lost earnings, travel expenses and permanent injuries under the Act. *Id.*

This court subsequently instructed the parties to brief whether plaintiffs' recovery under the Act stripped them of standing to maintain this action. Memorandum and Order (September 2, 1988). The court expressed its belief in that order that Massachusetts law governs this action. *Id.* (citing *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13, 22–26 (1986); *Thomas v. Hanmer*, 109 A.D.2d 80, 489 N.Y.S.2d 802, 803–07 (1985)). As explained at the hearing on June 7, 1990, the court has decided to reaffirm that belief and to conclude that plaintiffs' recovery under the Act does not pre-

clude them from maintaining the instant action.

## II. DISCUSSION

### A. *Legal Standard*

 In diversity actions such as this, federal courts must look to the forum state's choice of law rules to determine the governing law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Because there are no material facts in dispute on this question, the choice of law issue can be decided on defendants' summary judgment motion, as can any questions of Quebec law presented under Fed.R.Civ.P. 44.1. *See, e.g., Freeman v. World Airways, Inc.*, 596 F.Supp. 841, 843 (D.Mass.1984) (determining choice of law on motion for partial summary judgment); *Ali v. Playgirl, Inc.*, 447 F.Supp. 723 (S.D.N.Y.1978) (determining questions of foreign law in summary judgment proceeding).

### B. *The Quebec Automobile Insurance Act*

The Act, which went into force in 1978, provides a no-fault, comprehensive plan of compensation for Quebec residents injured in automobile accidents in any location and nonresidents injured in automobile accidents in Quebec. R.S.Q. Ch. A–25. Indemnities are distributed by the Regie de l'assurance automobile du Quebec (the "Regie") and cover lost income, medical expenses, injury, disfigurement, suffering and loss of enjoyment. *Id.* at §§ 19, 44, 45. Compensation for the last four categories is subject to a $20,000 (Can.) statutory cap. *Id.* at § 44.

Section 4 of the Act eliminates common law actions for compensation, subject to certain exceptions which will be discussed below. It provides, in relevant part:

> The indemnities provided for in this title are in place and stead of all rights, recourses, and rights of action of any one by reason of bodily injury caused by an automobile and no action in that respect shall be admitted before any court of justice.

Section 7, however, provides that a Quebec resident who is injured outside of Quebec retains any rights to recovery he has under the law of the place of injury, and that the Regie is subrogated to such rights to the extent it has paid his claim:

> The victim of an accident that occurred outside Quebec who is entitled to the compensation provided for in this title may benefit by it while retaining his rights of action with regard to the excess under the law of the place where the accident occurred.

> Notwithstanding section 4, the Regie, where it compensates a victim under this section, is subrogated in the victim's rights and is entitled to recover the compensation and the capital representing the pensions that the Regie is thereby required to pay from any person not resident in Quebec who, under the law of the place where the accident occurred, is responsible, and from any person liable for compensation for bodily injury caused in the accident by such non-resident.

Section 8 authorizes the compensation of a nonresident injured in Quebec, provided that he was not responsible for the accident and that his native government does not have an agreement with the Regie barring such indemnity.

Section 9 empowers the Regie to seek recovery from any nonresident who causes an accident in Quebec for any compensation the Regie has paid to victims of the accident. This subrogation clause provides in relevant part:

> Notwithstanding section 4, the Regie, where it compensates a victim by reason of an accident that occurred in Quebec, is subrogated in the victim's rights and is entitled to recover the indemnities and the capital representing the pensions that the Regie is thereby required to pay from any person not resident in Quebec who is responsible for such accident to the extent that he is responsible therefor and from any person liable for compensation of bodily injury caused in the said accident by such non-resident.

## C. *Choice of Law*

■ The first question presented to the court is whether Massachusetts or Quebec substantive law governs this action.[1] The court holds that Massachusetts law governs the creation and maintenance of plaintiffs' right of action in the instant case.

In *Pevoski v. Pevoski*, 371 Mass. 358, 358 N.E.2d 416 (1976), which arose out of an automobile accident in New York, the Massachusetts Supreme Judicial Court abandoned the state's strict adherence to the traditional doctrine of lex loci delicti. 371 Mass. at 360, 358 N.E.2d 416. While noting that this rule "will continue to provide[ ] a rational and just procedure for selecting the law governing the vast majority of issues in multi-State tort suits," *Id.* at 359, 358 N.E.2d 416, the SJC relied heavily on the landmark New York case of *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), in determining that the lex loci delicti may not govern all issues in a tort case. "Where the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented." *Id.* at 360, 358 N.E.2d 416 (quoting *Babcock*, 12 N.Y.2d at 484, 240 N.Y.S.2d 743, 191 N.E.2d 279). Thus, different laws could apply to different aspects of a case, depending on which state has the dominant interest in their resolution. *See Cohen v. McDonnell Douglas Corp.*, 389 Mass. 327, 450 N.E.2d 581 (1983).

Following the above reasoning, the *Pevoski* Court determined that Massachusetts law should govern the issue of interspousal immunity in that case, because the Commonwealth was the domicile of the parties and "the economic and social impact of [the] litigation will fall on Massachusetts domiciliaries and a Massachusetts insurer." 371 Mass. at 360, 358 N.E.2d 416. According-ing to the Court, the rights and liabilities of the parties stemming from their spousal relationship should not change due to "the fortuitous occurrence of the accident" in New York. *Id.* (quoting *Babcock*, 12 N.Y.2d at 483, 240 N.Y.S.2d 743, 191 N.E.2d 279).

Since *Pevoski*, the SJC has refused to bind itself to a single choice of law doctrine. *See, e.g., Choate, Hall & Stewart v. SCA Services, Inc.*, 378 Mass. 535, 541, 392 N.E.2d 1045 (1979). "As with our tort cases, we decide here not to tie Massachusetts conflicts law to any specific choice-of-law doctrine, but seek instead a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole.... We, therefore, determine the choice-of-law question by assessing various choice-influencing considerations." *Bushkin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 631, 473 N.E.2d 662 (1985).

In identifying and analyzing the relevant "choice-influencing considerations," both state and federal courts in Massachusetts have relied increasingly on the Restatement (Second) of Conflict of Laws, while not adhering to it strictly. *E.g., Bushkin*, 393 Mass. at 632–36, 473 N.E.2d 662 (emphasizing choice-influencing factors listed in Restatement (Second) § 6(2) as opposed to specific choice of law rules of the Restatement (Second)). In *Emery Corp. v. Century Bancorp., Inc.*, 588 F.Supp. 15, 17–18 (D.Mass.1984), for example, the court noted "that Massachusetts has abandoned strict adherence to the rule of lex loci delicti for many types of actions and has adopted a flexible approach to choice of law questions which is similar to the approach used in the Restatement (Second)." Nonetheless, the court declined to mechanically implement the seemingly applicable Restatement rules and instead compared the relative strengths of the governmental interests of the implicated states. *Id.; see also Computer Systems Engineering, Inc. v. Qantel Corp.*, 740 F.2d 59, 70 (1st Cir.

---

**1.** Neither party has suggested that the law of New Jersey, the domicile of plaintiffs, may govern this case.

1984) ("a Massachusetts court would apply a test not materially different from that of the Restatement (Second)"); *Freeman,* 596 F.Supp. at 845 ("Massachusetts would follow an analysis similar to if not identical with that of the Restatement (Second)"); *Schulhof v. Northeast Cellulose, Inc.,* 545 F.Supp. 1200, 1203 (D.Mass.1982) (same).

In *Alves v. Siegel's Broadway Auto Parts, Inc.,* 710 F.Supp. 864 (D.Mass.1989), the court confronted a products liability action involving Connecticut plaintiffs, a Connecticut place of injury, a Massachusetts defendant, and a Massachusetts product. The court began by stating, "The current approach appears to be a bit of a hybrid, mixing lex loci delicti and the Second Restatement's 'most significant relationship test.'" *Id.* at 870 (citing *Cohen,* 389 Mass. at 333, 450 N.E.2d 581). Then, applying §§ 6(b) [2] and 146 [3] of the Restatement (Second), the court determined that no state, including Massachusetts, had a more significant relationship to the cause of action than the place of the injury, and therefore that the Connecticut statute of repose should apply. *Id.* at 871–72.

A similar result was reached in *Cohen,* on which the *Alves* court relied. In that case, the SJC held that Massachusetts law would apply in an action for breach of warranty where the underlying injury was caused in Massachusetts to a Massachusetts resident by conduct occurring in Illinois. Other contacts were spread among various states. The SJC concluded, "On the record submitted to the court in this case ... no other State, including Illinois, appears to have a more significant interest in the plaintiff's claim than that of Massachusetts. Although the record reveals a variety of contacts with other States, none of these contacts is sufficient to outweigh the interest of Massachusetts in determining whether conduct which causes injury in this State to a resident of this State shall result in liability." *Cohen,* 389 Mass. at 336–37, 450 N.E.2d 581 (applying lex loci delicti where no other state had more significant interest).

Despite the doctrinal presumption in favor of the law of the place of injury, the court believes that Massachusetts' significant interest in preserving a common law remedy for plaintiffs mandates application of Commonwealth law. Although plaintiffs are not Massachusetts domiciliaries, and thus the Commonwealth has no particular interest in protecting their rights to full recovery, several of the factors listed in Restatement (Second) § 6(2) point toward this result.

With regard to "the needs of the interstate and international systems," there is no danger in this case of offending the interests of Quebec. The Act itself provides that the Regie can seek reimbursement from a responsible nonresident for accidents caused in the province, and it does not restrict such recovery to Canadian courts or causes of action. *See Regie de*

---

**2.** Section 6(b) of the Second Restatement provides, in relevant part:
[T]he factors relevant to the choice of the applicable rule of law include:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result,
(g) ease in the determination and application of the law to be applied.

**3.** Section 145 of the Second Restatement provides that in tort cases:

(1) The rights and liabilities of the parties with respect to an issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*L'Assurance Automobile du Quebec v. Jensen*, 399 N.W.2d 85 (Minn.1987) (Regie proceeds under Minnesota law). The Act incorporates another exception to its general exclusivity clause by permitting Quebec residents injured outside the province to seek recovery under the laws of the place of their injuries. Application of Quebec law in this case, then, might lead to the anomalous result that Americans injured by other Americans in Quebec would be precluded from recovering in tort under the laws of the province, while Quebec residents injured outside their home territory would be free to sue under the Act in the courts of the place of the accident. *See O'Connor*, 519 A.2d at 25.

Restricting an American citizen to the limited recovery available under the Act would give the Act an extraterritorial effect which it does not clearly express and which might seriously impinge on the sovereign interests of an American state. In this respect the situation is distinguishable from *Alves*, in which the court found that the needs of the interstate system counseled the application of Connecticut's statute of repose, because allowing a cause of action which Connecticut law deemed time-barred would not foster harmonious relations between the states and would nullify the statute's effect of promoting the flow of goods in interstate commerce into Connecticut. 710 F.Supp. at 871–72. Here, to the contrary, to the extent that the Regie is partially subrogated to plaintiffs, pursuit of this cause of action is in Quebec's interest and might promote the efficient and predictable allocation of losses within the international legal system.

With regard to the relevant policies of the forum, Massachusetts law clearly expresses a preference for preserving plaintiffs' common law causes of action. The Commonwealth's no-fault automobile insurance law explicitly retains such actions for medical expenses in excess of $2,000 (the amount covered by the insurance benefits), for diminished earning capacity above and beyond that covered by any wage continuation plan and for pain and suffering in cases where reasonable and necessary medical expenses exceed $500. *See Pin-nick v. Cleary*, 360 Mass. 1, 8–9, 271 N.E.2d 592 (1971); St.1970, c. 670. Thus, while Massachusetts has recognized the value of a no-fault system in providing prompt, inexpensive compensation to accident victims and in reducing high automobile insurance rates, it has not determined that these values must be served at the cost of a plaintiff's traditional rights to recovery. *See Victum v. Martin*, 367 Mass. 404, 326 N.E.2d 12 (1975). And while the plaintiff here is not a Massachusetts citizen, the defendants and their insurer(s) are, and must therefore make their decisions regarding matters such as insurance rates, allocation of risks and damages in light of the policies and laws of the Commonwealth. Subjecting them to these policies and laws is thus neither surprising nor unfair.

Quebec, on the other hand, has little interest in the determination of whether its Automobile Insurance Act precludes the rights of action of an United States citizen against another United States citizen in an United States court. Pursuit of this action will not raise the insurance rates of a Quebec vehicle owner nor will it impose costs on any Quebec defendant. To the extent the pension paid by the Regie may be reimbursed, Quebec can only benefit from this action. While Quebec has instituted a universal, comprehensive no-fault compensation scheme to protect its residents and those who are injured within its borders, the exceptions to § 4's exclusivity provision clearly demonstrate that the province has a coordinate policy and interest in recovering its expenditures from responsible nonresidents whenever feasible.

With regard to the justified expectations of the parties, it is probable that Reisch and McGuigan acted without prior consideration of their legal consequences in this case. *See Alves*, 710 F.Supp. at 871. "There are occasions, particularly in the area of negligence, where the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations to protect." Restatement (Second) at § 6,

comment g. Even if this criterion is not completely irrelevant to the current case, its application militates slightly in favor of Massachusetts law. In light of § 9 of the Act, defendants should have realized that they could be subject to suit by the Regie for a limited sum of money, even if they believed that plaintiffs here had waived their causes of action. From plaintiffs' perspective, the import of § 4 of the Act is not so clear that they should necessarily have expected their traditional common law rights to be abrogated.

The basic policies underlying the particular field of law have been touched upon in the section on Massachusetts policy above. As far as the court can determine, no American state has yet enacted a no-fault system which bars common law negligence actions in serious injury cases. The basic policy in this country is still one which allows full recovery by the victim from the tortfeasor of medical expenses, lost capacity and pain and suffering caused by the defendant's wrongdoing.[4]

With regard to certainty, predictability and uniformity of result, the case law suggests that, with regard to the creation and survival of a cause of action between parties as opposed to the appropriate standard of conduct, Massachusetts law should govern in this case. The location of the accident in Canada, during a trip which began and was supposed to terminate in Massachusetts, was purely adventitious. "Although the rightness or wrongness of [the] defendant's conduct may depend upon the law of the particular jurisdiction through which the automobile passes, the rights and liabilities of the parties which stem from their guest-host relationship should remain constant and not vary and shift as the automobile proceeds from place to place." *Babcock*, 12 N.Y.2d at 483, 240 N.Y.S.2d 743, 191 N.E.2d 279 (declining to apply Ontario guest statute to action involving New York passenger injured by alleged negligence of her New York host driver while in Ontario) (quoted in *Pevoski*, 371 Mass. at 360, 358 N.E.2d 416); *see also Saharceski v. Marcure*, 373 Mass. 304, 311–12, 366 N.E.2d 1245 (1977) (applying Massachusetts law of co-employee liability where Massachusetts resident injured by alleged negligence of Massachusetts co-employee while passing through Connecticut; "elimination of happenstance, a sort of unknowing geographical Russian roulette, as the controlling factor is particularly significant in a case where no business was to be transacted in the jurisdiction where the injury took place"). While this factor is not as persuasive in the instant circumstances as in those cases where both plaintiff and defendant are residents of the forum state and share a more formal relationship with each other, it still points in favor of Commonwealth law. There seems little doubt that Massachusetts law would apply if plaintiffs were Massachusetts domiciliaries. *See Pevoski*, 371 Mass. at 358, 358 N.E.2d 416; *see also O'Connor*, 519 A.2d at 13; *Thomas*, 489 N.Y.S.2d at 802. Where plaintiff travelled to Massachusetts to begin his trip and was a passenger in a car licensed and insured in Massachusetts and driven by a Massachusetts resident, considerations of consistency, predictability and uniformity of result suggest that he should also have the benefits of the laws of the Commonwealth in asserting a right to compensation against the allegedly negligent driver.[5]

The court finds the foregoing analysis consistent with that found in *O'Connor*, 519 A.2d at 13, and *Thomas*, 489 N.Y.S.2d

---

4. The same or similar argument can be made under the "better law" approach advocated by Professor Leflar, which was approvingly cited in *Bushkin*, 393 Mass. at 634, 473 N.E.2d 662 (citing R.A. Leflar, American Conflicts Law 195 (3d ed. 1977)). One of the five choice-influencing factors suggested by Professor Leflar is "application of the better rule of law," which a Massachusetts court, in these circumstances, would hold to be preservation of the traditional law of negligence.

5. The sixth factor listed in § 6 of the Restatement (Second) is "ease in the determination and application of the law to be applied." In the present instance, there is no material difference between the difficulty of interpreting and applying Quebec and Massachusetts law which would argue in favor of one over the other.

at 802, the two cases to previously address the choice of law implications of the Quebec Automobile Insurance Act. In *O'Connor*, a Connecticut passenger sued her Connecticut host driver in Connecticut state court as a result of an accident which occurred in Quebec. The Supreme Court of Connecticut, reversing the trial and intermediate appellate courts, relied principally on subsections 6(2)(b), (c) and (e) of the Restatement (Second) in deciding that plaintiff retained her right to sue defendant notwithstanding the Act. 519 A.2d at 22. The Court stated in part:

> ... Clearly the goal of reducing insurance premiums in Quebec is not furthered by application of the Quebec no-fault act to an accident involving only nonresidents of Quebec, in an automobile that was not insured in the province. Quebec's interest in alleviating the administrative and judicial costs of automobile accident litigation is in no way implicated when, as in this case, a nonresident brings suit against another nonresident in a foreign jurisdiction. We note that a Quebec resident suing the defendant in Connecticut would not be subject to the Quebec act's lawsuit prohibition.... Application of Quebec law in these circumstances would thus produce the same anomalous result that we deplored in *Simaitis* ..., since it would "bestow upon temporary visitors injured in Connecticut all the relief which [Connecticut law] affords, but deny that same relief to Connecticut residents" injured in Quebec.

The foregoing analysis leads us to conclude that Quebec's status as the place of injury is not a significant contact for purposes of our choice of law inquiry in this case. Accordingly, since Quebec has no other contacts with this litigation, we hold that Quebec has no interest in applying its no-fault act to bar the plaintiff's action.

*Id.* at 24–25 (cites omitted). The Court then proceeded to analyze Connecticut's interest in having its law applied to the case, reasoning that such basis was present because both parties were Connecticut domiciliaries and the medical costs and other consequences of plaintiff's injury would be borne in Connecticut. *Id.* at 25. The Court also stated that "Connecticut has a strong interest in assuring that the plaintiff may avail herself of the full scope of remedies for tortious conduct that Connecticut law affords," as demonstrated by the fact that Connecticut's no-fault insurance act, like Massachusetts', permits the more seriously injured to seek redress in a traditional judicial forum. *Id.*

The same result was reached through similar reasoning in *Thomas*, which involved two cars registered and insured in New York, driven by New York domiciliaries, which got into an accident in Quebec. The appellate division first noted New York's significant interest in assuring adequate compensation for its plaintiff domiciliary. 489 N.Y.S.2d at 805. It then stated:

> ... As in *Babcock*, Canada has no contact with this case except for the "purely adventitious circumstance" that the accident occurred in Quebec.... Quebec, therefore, has no conceivable interest in denying plaintiff the right to recover for pain and suffering.
>
> Since both cars involved in the accident were insured in New York there is no risk of higher insurance premium rates for Quebec drivers. Moreover, since there is no territorial limitation ... restricting liability coverage in the standard New York insurance policy ... presumably the premiums charged by the State regulated insurance companies take into consideration the possibility that accidents will occur to New York residents travelling out of state....

*Id.* at 806. The court did acknowledge, however, that in *Blais v. Deyo*, 92 A.D.2d 998, 461 N.Y.S.2d 471 (3rd Dept.), *aff'd*, 60 N.Y.2d 679, 468 N.Y.S.2d 103, 455 N.E.2d 662 (1983), it ruled against application of New York law in a case where Quebec residents were injured in Quebec by a New York defendant. "Thus, unlike the instant case where plaintiffs and defendants have common domicile in New York, *Blais* was a split domicile case in which the court applied the rule of lex loci delicti because plaintiffs did not establish that displacement of that rule would advance relevant

substantive law purposes." *Thomas,* 489 N.Y.S.2d at 807.

Although this case is complicated by the non-Massachusetts domicile of plaintiffs, the court concludes that the policies of the Commonwealth and the basic rules underlying modern American tort law, when combined with the minimal interest of Quebec in application of its law to this case, dictate that Massachusetts law should determine plaintiffs' right to bring suit against defendants in this court. As suggested by *O'Connor, Thomas* and the analysis above, the status of Quebec as the place of injury is not sufficient to overcome the Commonwealth's interest in preserving the integrity of its common law remedies.

D. *Election of Remedy*

■ Even though Massachusetts law governs plaintiffs' right to bring suit in this court, they arguably may have waived that right by electing to collect an indemnity under the Quebec Automobile Insurance Act. However, for reasons similar to those stated at length above, the court finds that plaintiffs' actual application for and receipt of indemnity from the Regie does not bar their pursuit of recovery in this case.

Despite defendants' contentions to the contrary, no problem of inconsistent remedies exists in this case, because the Regie provides only limited compensation for injuries and pain and suffering. Moreover, the Regie is subrogated to plaintiffs' recovery in the present action to the extent it has paid benefits to them. Thus, there is no danger of double recovery on plaintiffs' part and no inconsistency between indemnification by the Regie and recovery of excess damages from defendants and their insurers. *See Nevader v. Deyo,* 111 A.D.2d 548, 489 N.Y.S.2d 420, 422 (3rd Dept.1985) (permitting suit in tort where plaintiff had received benefits under Quebec Act). In addition, the Act itself does not bar the Regie from seeking indemnification from responsible nonresident parties; thus, pre-

cluding plaintiffs' suit would not serve the purposes of Massachusetts tort law or of the Act. *Cf. Parrell v. Keenan,* 389 Mass. 809, 816 n. 9, 452 N.E.2d 506 (1983) ("The insurance company had rights of subrogation only to the extent of its payments to the plaintiff, and therefore it could not release all of her claims").

■ In addition, plaintiffs are proper parties to bring this action despite their subrogation to the Regie. The parties have stipulated that plaintiffs' medical costs exceed $60,000, establishing that the Regie, which only paid $30,000 to plaintiffs, is only a partial subrogee. In cases of partial subrogation, either the insured or the insurer may sue as a "real party in interest." C. Wright, A. Miller & M. Kane, 6A Federal Practice and Procedure § 1546 at p. 360 (1990):

> The insurer who pays a part of the loss is only partially subrogated to the rights of the insured. This may occur when the loss exceeds the coverage or when the insurance policy contains a deductible amount that must be borne by the insured. The respective rights of the party in this situation parallel those when there has been a partial assignment. Either the insured or the insurer may sue.

*Id.; see also Parrell,* 389 Mass. at 809, 452 N.E.2d 506 (insurance company's release of defendant did not bar subsequent action by insured for injuries not compensated by insurer); M. Rhodes, Couch on Insurance 2d (Revised) § 61:26 at 106 (1983).[6] In Massachusetts, subrogation has traditionally been defined to include the right to proceeds recovered by the subrogor as well as the right to assert causes of action formerly belonging to the subrogor. *See Frost v. Porter Leasing Corp.,* 386 Mass. 425, 426–27, 436 N.E.2d 387 (1982). It is not clear how the Regie and the Quebec courts have interpreted "subrogation" in the context of the Act. However, it is certain that plaintiffs have standing to maintain this action

---

**6.** If the Regie does not voluntarily join plaintiffs' action, defendants may move for joinder under Fed.R.Civ.Proc. 19. *See Baker v. Southern Pacific Trans.,* 542 F.2d 1123, 1126 (9th Cir.1976). The law is unsettled whether such a

motion must be granted at all, and it seems clear that in most cases the insurer is not an indispensable party. *Id.;* Wright, *et al., supra,* at pp. 362–63.

under both federal procedural and state substantive law and that the Regie can protect its interests, if it wishes, by intervening in the suit as a partial subrogee.

## III. CONCLUSION

For the reasons stated above, the court holds that Massachusetts law governs plaintiffs' right to bring suit and that plaintiffs' receipt of compensation from the Regie neither waives their right to recover in tort nor strips them of standing to maintain this action.