### Carl K. COLLINS et al.
### v.
### TRIUS, INC.

Supreme Judicial Court of Maine.

Argued March 1, 1995.
Decided Aug. 15, 1995.

---

Samuel W. Lanham, Jr. (orally), Cuddy & Lanham, Bangor, Paul S. Douglass (orally), Platz & Thompson, Lewiston, for plaintiffs.

Bernard J. Kubetz (orally), Eaton, Peabody, Bradford & Veague, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

The case we consider was reported[1] to us by the Superior Court (Penobscot County, *Mead, J.*) after it denied Trius, Inc.'s motion to have Canada's law of damages applied to this action rather than Maine's. Trius contends that Canadian damages law, which limits its recovery in tort for "pain and suffering,"[2]

---

1. M.R.Civ.P. 72(c) provides:
   (c) **Report of Interlocutory Rulings.** If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action in the Superior Court ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

2. The Canadian limit of $100,000 (Canadian) on non-pecuniary losses was established in the so-called "Trilogy" cases: *Andrews v. Grand & Toy Alberta Ltd.*, 2 S.C.R. 229 (1978); *Arnold v. Teno*, 2 S.C.R. 287 (1978); *Thornton v. Board of Sch. Trustees of Sch. Dist. No. 57 (Prince George)*, 2 S.C.R. 267 (1978). The "Trilogy" cap is adjusted for inflation. *See Sivret v. Kenney*, 142 N.B.R.2d 161 (1993) ("Trilogy" cap equivalent to $233,000 in 1993 Canadian dollars).

should apply. We agree and vacate the decision of the Superior Court.

## I.

Trius, a Canadian corporation, is engaged in the business of operating motor coaches for hire.[3] A tour bus owned and operated by Trius was involved in an accident in Clifton, Maine, on December 3, 1992. The bus left the roadway and overturned after striking a pickup truck driven by Michael Treadwell. Eight passengers brought actions in the Superior Court.[4] The bus passengers and bus driver were all residents of Canada. The bus was registered in Canada, and the passengers had purchased their tickets in Canada. The bus trip originated in New Brunswick and was to arrive in New York on December 4, 1992, before returning to Canada on December 10, 1992.

## II.

We review questions of law *de novo*. *See Lord v. New England Soc'y for the Preservation of Antiquities, Inc.*, 639 A.2d 623, 624 (Me.1994). We abandoned the

rigid *lex loci delicti* choice of law rule with respect to an action for a personal injury in *Beaulieu v. Beaulieu*, 265 A.2d 610 (Me. 1970). In *Adams v. Buffalo Forge Co.*, 443 A.2d 932 (Me.1982), we explained:

> In *Beaulieu* we cited favorably the approach of the *Restatement (Second) of Conflict of Laws* § 379, comment d, p. 9 (Tent. Draft No. 9) (1964) which implemented the use of the more flexible "most significant contacts and relationships" test. 265 A.2d at 616–17. Since our decision in *Beaulieu* the official draft of the *Restatement (Second) of Conflict of Laws* (1971) has been approved and published by the American Law Institute. Sections 145 and 146 of the *Restatement (Second)* continue to advocate the "most significant contacts and relationships" test promulgated by the earlier drafts. Section 146 now provides that "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, *unless*, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and the parties...."[5]

---

3. Trius holds an Interstate Commerce Commission Motor Carrier Permit. It also holds a permit issued by the Secretary of State for the State of Maine, authorizing Trius in accordance with 29 M.R.S.A. § 2703 (Supp.1994) to operate motor coaches in Maine. In addition, as required by 29 M.R.S.A. § 2708–A(2)(C)(2) (Supp.1994), Trius had filed a proof of insurance bond in the sum of $5,000,000 (U.S.).

4. Carl K. Collins, Katheren B. Collins, Frances A. Coloris, William C. Green, Constance M. Murphy, Gertrude V. Seely, and Mabel E. Seely brought an action in January 1993. Helen Nelson brought an action in February 1993. In addition, Judith Collins, James Coloris, and Roger Nelson were not passengers on the bus but brought claims for loss of consortium. These actions were later consolidated. Treadwell, the only Maine resident involved in the accident, also filed an action in the Superior Court which was included in the consolidation. That action has been settled and dismissed. Similarly, the claims of Roger and Helen Nelson were settled and dismissed in June 1995. The plaintiffs seek compensation for pain and suffering, mental anguish, permanent impairment, loss of enjoyment of life, medical expense, loss of income past and future, and loss of consortium. The actions are based on the alleged negligent operation by Trius's employee and on the alleged negligence of Trius in supervising its employee.

5. Section 145 enunciates the "general principle" as follows:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place where the injury occurred,
> > (b) the place where the conduct causing the injury occurred,
> > (c) the domicil, residence, nationality, place of the parties, and
> > (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
> Section 6 provides in pertinent part:
> (2) [T]he factors relevant to the choice of the applicable rule of law include
> > (a) the needs of the interstate and international systems,
> > (b) the relevant policies of the forum,
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

*Adams,* 443 A.2d at 934 (citations and footnote omitted).

■ In applying the "most significant contacts and relationships" test, it is necessary to isolate the issue, to identify the policies embraced in the laws in conflict, and finally to examine the contacts with the respective jurisdictions to determine which jurisdiction has a superior interest in having its policy or law applied. Here, the specific issue is whether Canadian damages law, which limits recovery in tort for non-pecuniary harm, should apply to this action. Although Maine has a significant interest in regulating conduct on its highways, the rule at issue is primarily "loss-allocating" rather than "conduct-regulating." In the so-called "Trilogy" cases, Canada has demonstrated a profound interest in achieving a measure of uniformity in tort recovery among Canadian residents.

■ There is general agreement that the one incontestably valuable contribution of the choice-of-law revolution in the tort conflict field is the line of decisions applying common-domicile law in cases where the parties are codomiciliaries of the same state. Harold L. Korn, *The Choice-of-Law Revolution: A Critique,* 83 Colum.L.Rev. 772, 799 (1983) *cited in Thomas v. Hanmer,* 109 A.D.2d 80, 489 N.Y.S.2d 802, 806 (1985). The superiority of the common domicile as the source of law governing loss-distribution issues is evident. At its core is the notion of a social contract, whereby a resident assents to casting her lot with others in accepting burdens as well as benefits of identification with a particular community, and ceding to its law-making agencies the authority to make judgments striking the balance between her private substantive interests and competing ones of other members of the community.

■ In *Adams,* we found it particularly significant that the case was not one "in which the *only* connection [was] the fortuitous fact that the injury was sustained in Maine." *Adams,* 443 A.2d at 934. Here, in contrast, Maine has little contact with this case except that the accident occurred within our boundaries. The bus passengers and bus driver were all residents of Canada, the bus was registered in Canada, the passengers had purchased their tickets in Canada, and the bus trip originated in and would return to New Brunswick. We conclude that Canada has the most significant interest with respect to the issue of damages for non-pecuniary harm in this case, and therefore Canadian damages law should apply.[6]

The entry is:

Decision vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

6. We note that when by virtue of a conflict of laws rule of the forum the question that requires adjudication is governed by the law of a foreign country, the reference may be either to the corresponding conflict of laws rule of that foreign country or exclusively to the appropriate "internal or domestic" substantive law of that country. The *Restatement (Second) of Conflict of Laws* § 4 defines "law" as "that state's local law, together with its rules of Conflict of Laws." It defines "local law" as "the body of standards, principles and rules, exclusive of its rules of Conflict of Laws, which the courts of that state apply in the decision of controversies brought before them." Sections 145 and 146 of the *Restatement (Second)* expressly refer to the "local law" of the state of the applicable law. Section 145 comment h further explains that "reference is to the 'local law' of the state of the applicable law and not that state's 'law,' which means the totality of its rules including its choice-of-law rules." We agree with the *Restatement* analyses and therefore apply Canadian law exclusive of its conflict of laws rules.