[731 NYS2d 113]

HORIA F. BODEA et al., Respondents, v TRANSNAT EXPRESS, INC., et al., Appellants.

Fourth Department, September 28, 2001

APPEARANCES OF COUNSEL

*Conboy McKay Bachman & Kendall,* Watertown (*Stephen W. Gebo* of counsel), for Transnat Express and another, appellants.

*Maloney Schell & Eisenhauer, P. C.,* Watertown (*Michael W. Schell* of counsel), for Horia Florian Bodea and another, respondents.

## OPINION OF THE COURT

HAYES, J.

## I. Introduction

Plaintiffs commenced this action to recover damages for injuries sustained by Horia Florian Bodea (plaintiff) in a motor vehicle accident that occurred in Jefferson County on January 4, 1999. Plaintiff was driving from Ottawa to Maryland, where he was employed. Although plaintiff and his wife were residents of the Province of Ontario, plaintiff also maintained an apartment in Maryland. The multi-vehicle accident occurred during a snowstorm. Plaintiff had slowed down his vehicle due to accidents in the road. Defendant Stephane St. Germain, who was driving a tractor-trailer, was unable to stop as he approached plaintiff's vehicle from behind, and he collided with plaintiff's vehicle. At the time of the accident, St. Germain was a resident of the Province of Quebec and was working for defendant TransNat Express, Inc. (TransNat Express), a Canadian corporation with its principal business office in the Province of Quebec.

Defendants moved to dismiss the complaint upon the ground of forum non conveniens, arguing that New York did not have a substantial nexus with the action. In the alternative, defendants sought an order declaring that the laws of the Province of Ontario apply to this action with respect to the nature and extent of damages recoverable by plaintiffs. Under the facts and circumstances of this case, we conclude that Supreme Court properly denied the motion in its entirety.

## II. Forum Non Conveniens

 Pursuant to CPLR 327 (a), a court may dismiss an action when it finds in the interest of substantial justice that the action should be heard in another forum. The doctrine of forum non conveniens is based upon considerations of "justice, fairness and convenience" (*Islamic Republic of Iran v Pahlavi,* 62 NY2d 474, 479, *cert denied* 469 US 1108; *see, Martin v Mieth,* 35 NY2d 414, 417; *Price v Brown Group,* 206 AD2d 195, 200-201). It is a flexible doctrine to be applied by the court in its sound discretion based upon the facts and circumstances of each case (*see, National Bank & Trust Co. v Banco De Vizcaya,* 72 NY2d 1005, 1007, *cert denied* 489 US 1067; *Islamic Republic of Iran v Pahlavi, supra,* at 479; *Silver v Great Am. Ins. Co.,* 29 NY2d 356, 361). The doctrine should be applied "when it plainly appears that New York is an inconvenient forum and that another is available which will best serve the ends of justice and the convenience of the parties" (*Silver v Great Am. Ins. Co., supra,* at 361; *see, National Bank & Trust Co. v Banco De Vizcaya, supra,* at 1007). A court should not retain jurisdiction where the action lacks a substantial nexus to New York (*see, Martin v Mieth, supra,* at 418). The fact that the underlying tort is committed in New York does not, standing alone, constitute a substantial nexus with New York (*see, Martin v Mieth, supra,* at 418; *Singh v Zuidema,* 221 AD2d 1020).

The court did not abuse its discretion in denying that part of defendants' motion seeking dismissal of the action based upon forum non conveniens. In addition to the fact that the accident occurred here, New York has other connections as well (*cf., Martin v Mieth, supra,* at 418). Many of the witnesses to the accident reside in New York, including four who testified against St. Germain at his trial for a violation of Vehicle and Traffic Law § 1180 (e). The police and medical personnel at the scene of the accident reside in New York, including the New York State Trooper who interviewed St. Germain. The testimony of those witnesses is crucial because plaintiff has no memory of the accident. In addition, plaintiff spent almost two weeks hospitalized at the Samaritan Medical Center in Watertown after the accident, and the medical witnesses reside in New York. Upon the facts of this case, we agree with the court that New York is not an inconvenient forum and that the action has a substantial nexus to New York (*see, Shelton v Cable Express,* 275 AD2d 1017; *Singh v Swan,* 225 AD2d 1057; *Brodherson v Ponte & Sons,* 209 AD2d 276).

## III. Choice of Law

### A. Laws at Issue

When a case presents a potential choice of law issue, a court should first analyze whether there is an actual conflict between the laws in the different jurisdictions (*see, Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.],* 81 NY2d 219, 223). In this case, the laws of New York, the Province of Ontario, and the Province of Quebec are conflicting with respect to the recovery of damages for injuries sustained in an automobile accident. In New York, the no-fault legislation provides that an injured party may recover for his or her basic economic loss without regard to fault (Insurance Law § 5102 [a], [b]; § 5103 [a]). A person who has sustained a serious injury may commence an action to recover damages for non-economic loss, and there is no limitation on the amount of that recovery (*see,* Insurance Law § 5104 [a]). The Province of Ontario also has no-fault legislation, and an injured party may bring an action to recover damages for non-economic loss under certain circumstances. However, the amount of damages that the party may recover is limited (RSO 1990 ch I.8, § 267.5 [Insurance Act]; *see, Mensah v Moxley,* 235 AD2d 910, 911). The Province of Quebec also has no-fault legislation, but an injured party may not bring an action to recover damages for non-economic loss (RSQ ch A-25, § 83.57 [Automobile Insurance Act]; *see, Jean v Francois,* 168 Misc 2d 48, 49-50; *see also, LaForge v Normandin,* 158 AD2d 990; *Thomas v Hanmer,* 109 AD2d 80, 81).

New York's legislative no-fault scheme was enacted to ensure prompt and full compensation for an injured party's basic economic loss, without regard to fault (*see, Thomas v Hanmer, supra,* at 84; *Zoldas v Louise Cab Corp.,* 108 AD2d 378, 380). In addition, the legislation was intended to reduce litigation in automobile accident cases, thereby lowering no-fault insurance premiums, while still allowing recovery for non-economic loss resulting from serious injuries (*see, Licari v Elliott,* 57 NY2d 230, 236-237; *Thomas v Hanmer, supra,* at 84; *see also, Dufel v Green,* 84 NY2d 795, 798).

The purpose of Ontario's no-fault legislation is similar: "The legislation appears designed to control the cost of automobile insurance premiums to the consumer by eliminating some tort claims. At the same time, the legislation provides for enhanced benefits for income loss and medical and rehabilitation expenses to be paid to the accident victim regardless of fault" (*Meyer v Bright,* 15 OR3d 129, 134).

Although the record does not indicate the purpose of Quebec's no-fault legislation, we assume that it is similar to that of New York and Ontario, with an emphasis on keeping insurance premiums low (*see generally*, *Thomas v Hanmer, supra,* at 84).

## B. Interest Analysis

The traditional rule in choice-of-law conflicts in tort actions was that the law of the place of the tort applied to all substantive issues (*see, Cooney v Osgood Mach.,* 81 NY2d 66, 71-72). That rule, however, has been replaced by "interest analysis," whereby controlling effect "must be given 'to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation'" (*Schultz v Boy Scouts,* 65 NY2d 189, 196; *see, Cooney v Osgood Mach., supra,* at 72). In determining which jurisdiction has the greatest interest in the litigation, the only facts or contacts of significance are those relating to the purpose of the particular law in conflict (*see, Schultz v Boy Scouts, supra,* at 197). In most cases, those significant facts or contacts consist exclusively of the parties' domiciles and the place of the tort (*see, Schultz v Boy Scouts, supra,* at 197).

In applying the interest analysis test, we must first determine "what are the significant contacts and in which jurisdiction are they located" (*Padula v Lilarn Props. Corp.,* 84 NY2d 519, 521). The significant contacts in this case are the domiciles of the parties and the place of the tort. Plaintiffs are domiciliaries of the Province of Ontario, defendants are domiciliaries of the Province of Quebec, and the place of the tort is New York.

We must next determine whether the purpose of the laws is to regulate conduct or allocate loss (*see, Padula v Lilarn Props. Corp., supra,* at 521). Where the conflicting laws involve the appropriate standards of conduct, the law of the place of the tort usually applies (*see, Cooney v Osgood Mach., supra,* at 72; *Schultz v Boy Scouts, supra,* at 198). On the other hand, where the conflicting laws are loss allocating, a court should apply one of the three rules set forth in *Neumeier v Kuehner* (31 NY2d 121, 128; *see, Padula v Lilarn Props. Corp., supra,* at 522; *Cooney v Osgood Mach., supra,* at 73-74). Loss allocating laws are those that "prohibit, assign, or limit liability after the tort occurs" (*Padula v Lilarn Props. Corp., supra,* at 522; *see, Schultz v Boy Scouts, supra,* at 198). The laws in conflict here are loss allocating (*see, Mensah v Moxley, supra,* at 911), and thus we must determine which of the three *Neumeier* rules applies.

## C. The Neumeier Rules

In *Neumeier* (*supra*, at 128), the Court set forth three rules for determining whether Ontario's guest statute would apply against a New York defendant. Those rules have since been applied to other tort actions involving conflicting loss allocation laws (*see, Schultz v Boy Scouts, supra*, at 199).

The first *Neumeier* rule applies when the parties share a common domicile; in that situation, the law of the common domicile controls (*see, Cooney v Osgood Mach., supra*, at 73). The second *Neumeier* rule applies when the parties are domiciled in different states, the situs of the tort is in a state in which a party is domiciled, and "the local law favors the respective domiciliary" (*Cooney v Osgood Mach., supra*, at 73; *see, Dorsey v Yantambwe*, 276 AD2d 108, 111, *lv denied* 96 NY2d 712). The second rule essentially "adopts a 'place of injury' test" (*Cooney v Osgood Mach., supra*, at 73). The third *Neumeier* rule applies in other situations when the parties are domiciled in different states with conflicting local laws. In that case, the law of the situs of the tort usually applies, unless " 'it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants' " (*Neumeier v Kuehner, supra*, at 128, quoting *Tooker v Lopez*, 24 NY2d 569, 585 [concurring opn]; *see, Cooney v Osgood Mach., supra*, at 73-74). Where the interest of each jurisdiction in enforcing its laws is "roughly equal[,] * * * the situs of the tort is appropriate as a 'tie breaker' because that is the only [jurisdiction] with which [the] parties have purposefully associated themselves in a significant way" (*Cooney v Osgood Mach., supra*, at 74).

Defendants contend that the first *Neumeier* rule applies because plaintiffs and defendants share the common domicile of Canada, and thus the court should apply the law of Canada rather than New York. The court properly rejected that contention. Although plaintiffs and defendants are all residents of Canada, they reside in different provinces there and thus are not codomiciliaries (*see generally, Tolofson v Jensen*, 3 SCR 1022, 1031-1032 [discussing choice of law when automobile accident involves residents of different provinces]). As previously noted herein, the laws of the Provinces of Ontario and Quebec are different with respect to the recovery of damages for injuries sustained in an automobile accident.

The third *Neumeier* rule applies to this case because the parties do not share a common domicile and the situs of the tort is

not in any party's domicile. Thus, the law of New York, the jurisdiction where the accident occurred, will apply unless defendants establish that displacing New York law would advance " 'the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants' " (*Neumeier v Kuehner, supra,* at 128). Defendants do not contend that the law of the Province of Quebec should apply, but contend that the law of the Province of Ontario should apply instead of the law of New York. We conclude that defendants failed to establish that the exception applies to warrant a departure from the locus jurisdiction rule (*see, Reale v Herco, Inc.,* 183 AD2d 163, 170).

In *Schultz v Boy Scouts* (*supra,* at 192-196), the plaintiffs and defendant Boy Scouts of America were codomiciliaries of New Jersey, defendant Franciscan Brothers of the Poor, Inc. (Franciscan Brothers) was a domiciliary of Ohio, and the injuries occurred in both New Jersey and New York. The choice of law in *Schultz* was between New Jersey and New York, states with conflicting charitable immunity rules; Franciscan Brothers did not contend that Ohio law applied (*Schultz v Boy Scouts, supra,* at 195). In analyzing which law applied to the action against the Franciscan Brothers, the Court applied the third *Neumeier* rule "because the parties [were] domiciled in different jurisdictions with conflicting loss-distribution rules and the locus of the tort [was] New York, a separate jurisdiction" (*Schultz v Boy Scouts, supra,* at 201). The Court applied the law of New Jersey, holding that to do so would advance the relevant substantive law purposes without impairing the multi-state system or producing great uncertainty (*Schultz v Boy Scouts, supra,* at 201). ·

Schultz is distinguishable because, in this case, both plaintiff and St. Germain regularly traveled through New York; their presence in New York was not merely fortuitous. Plaintiff traveled through New York on his way to and from his apartment and job in Maryland. St. Germain drove a tractor-trailer for TransNat Express, which did a significant amount of business in New York. In contrast, in *Schultz*, the injuries occurred in both New York and New Jersey, and the parties' contact with New York was infrequent (*Schultz v Boy Scouts, supra,* at 201-202). In addition, in this case, there is no shared domicile between plaintiffs and defendants; plaintiffs are from the Province of Ontario and defendants are from the Province of Quebec. In contrast, in *Schultz,* one of the defendants (Boy Scouts of America) was a codomiciliary of New Jersey with plaintiffs (*Schultz v Boy Scouts, supra,* at 192-194).

Upon the facts of this case, we conclude that applying the law of the Province of Ontario may create uncertainty for litigants; defendants are domiciliaries of the Province of Quebec and there is no reason why they would expect that the laws of the Province of Ontario would apply to an accident that occurred in New York. If both the Provinces of Ontario and Quebec had the same laws governing recovery of damages for injuries sustained in an automobile accident, and those laws differed from New York law, then our analysis would differ. Here, the laws of the three jurisdictions are all different. The interest of each party's jurisdiction in enforcing its no-fault laws is equal; each jurisdiction has "an interest in protecting the expectations of their respective domiciliaries and furthering the purposes of their no-fault laws" (*McCann v Somoza*, 933 F Supp 362, 368 [SD NY]). Therefore, the situs of the accident (New York) "is appropriate as a 'tie breaker'" because both plaintiffs and defendants have purposefully associated themselves with the laws of New York governing recovery from motor vehicle accidents when they chose to drive through this state (*Cooney v Osgood Mach., supra,* at 74). As noted by the Court of Appeals, "locus is a neutral factor, rebutting an inference that the forum State is merely protecting its own domiciliary or favoring its own law" (*Cooney v Osgood Mach., supra,* at 74).

### IV. Conclusion

Accordingly, we conclude that the order denying defendants' motion in its entirety should be affirmed.

PINE, J. P., HURLBUTT, BURNS and GORSKI, JJ., concur.

Order unanimously affirmed, without costs.