# Wade Miller v. Steven White

[702 A.2d 392]

No. 96-310

Present: Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed August 8, 1997

*Joshua B. Lobe* of *Lobe & Rees*, Burlington, for Plaintiff-Appellee.

*R. Allan Paul* and *Mark G. Hall* of *Paul, Frank & Collins, Inc.*, Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant and plaintiff are both residents of Vermont. They planned a short car trip to Quebec, Canada and, while in Quebec, were involved in a single-car accident in an automobile owned and operated by defendant and registered in Vermont. Plaintiff was injured in the accident and claims defendant's negligence caused the accident and his injuries. Defendant seeks interlocutory review of the trial court's decision to apply Vermont law to this personal injury action. We affirm.

On the evening of April 16, 1994, plaintiff Wade Miller, defendant Steven White and a group of friends decided to drive from Burlington, Vermont to the Frontier Bar in the Province of Quebec, Canada, where the lower drinking age allowed them to drink legally. The group arrived at the bar at approximately 10 p.m. and stayed

until about 3 a.m. While still in Canada and shortly after leaving the bar, defendant drove off the side of the road. As a result of the accident, plaintiff, who was a passenger in defendant's car, suffered head injuries and fractured vertebrae. He claims medical bills of $11,717, lost wages of $2,727, and other damages. Another passenger in the car brought suit against defendant in federal court.[1]

Plaintiff claimed that the action should be governed by Vermont law, which has retained a fault-based compensation system for automobile negligence claims. Defendant argued that the action should be governed by Quebec law, which provides a no-fault compensation system for injuries arising from automobile accidents and prohibits personal injury lawsuits. Consistent with that argument, defendant moved to dismiss on the basis that the suit is prohibited by Quebec law. Because no material facts were in dispute, both parties sought summary judgment on the choice-of-law issue. The trial court, applying the "most significant relationship" test from the Restatement (Second) of Conflict of Laws, concluded that Vermont law should govern. On appeal, defendant argues that the trial court should have applied the rule of lex loci delicti to resolve the choice-of-law question. In the alternative, defendant contends that Quebec has a more significant relationship to this case than Vermont, and that Quebec law should govern.

■    While this case was on appeal, we adopted the Restatement (Second) of Conflict of Laws test and held that the "choice of law in a tort action that implicates states or countries beyond Vermont will be determined by which state or country has the most significant relationship to the occurrence and the parties." *Amiot v. Ames*, 166 Vt. 288, 292, 693 A.2d 675, 677 (1997); see Restatement (Second) of Conflict of Laws § 145(1) (1971). We therefore affirm the trial court's use of the Restatement (Second) rule to resolve the choice-of-law issue in this case. See *State v. Styles*, 166 Vt. 615, 616, 693 A.2d 734, 735 (1997) (change in law will be given effect while case is on direct review, except in extraordinary circumstances). This case gives us the opportunity to explain the application of the Restatement principles to the facts and circumstances of a concrete case.

■ ■    The task of applying the provisions of the Restatement (Second) test to the facts of this case is one of law, which we review de

---

[1] The federal court case presented a similar choice-of-law issue, and the court held that Vermont law applied to the plaintiff's claims. See *Griffith v. White*, 929 F. Supp. 755, 761 (D. Vt. 1996).

novo. See *Amiot*, 166 Vt. at 293-96, 693 A.2d at 678-80; *Shields v. Consolidated Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987) (trial court's application of significant relationship test is issue of law subject to plenary review). Section 145(1) of the Restatement (Second) sets out the general standard: "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Section 6 of the Restatement (Second) states in turn the following general principles:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

The parties' expectations, the policies underlying the field of law, and the need for certainty carry less weight in tort law than in other areas of law. See *Amiot*, 166 Vt. at 293, 693 A.2d at 678. As a result, our analysis stresses the relevant policies of Vermont and Quebec and the needs of the international system.

The principles set forth in § 6 are general. To aid in applying them, the drafters of the Restatement (Second) have developed more specific lists applicable to the area of law for the choice being made. Section 145(2) highlights the specific contacts to be taken into account in applying the principles of § 6 in tort cases:

> (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

These contacts "are to be evaluated according to their relative importance with respect to the particular issue" before the court. Restatement (Second) of Conflict of Laws § 145(2).

We emphasize that the Restatement (Second) calls for an issue-by-issue determination of choice-of-law questions. Thus, it is possible that within one case, the law of one jurisdiction will apply to one issue and the law of another jurisdiction to another issue. For example, in a negligence action, the standard of care is normally determined by the "local law of the state where the injury occurred." *Id.* § 157(2). On the other hand, issues of damages are usually determined by the law of the parties' domicile, so long as the parties are both domiciled in the same state and there is a particular relationship between them which is centered in that state. *Id.* § 171 cmt. b. Along the same lines, the New York Court of Appeals has differentiated between laws that regulate primary conduct and those that allocate loss after the event occurs:

> If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing "postevent remedial rules" are at stake other factors are taken into consideration, chiefly the parties' domiciles.

*Cooney v. Osgood Mach.*, 612 N.E.2d 277, 280 (N.Y. 1993); see also Restatement (Second) of Conflict of Laws § 145 cmt. d (drawing similar distinction in more detail).

The question before us is what law applies to defendant's motion to dismiss, which claims that plaintiff's sole remedy is through the Quebec no-fault compensation system and not through this negligence action. The motion raises competing policies that allocate postevent losses, and both the Restatement (Second) and relevant precedents suggest that the domicile of the parties is the most significant contact bearing on the determination of the relevant law. To test this conclusion, we look at the competing interests of the domicile of the parties, Vermont, and the place of the accident, Quebec, in the question before us, and the needs of the international system, as specified in § 6 of the Restatement (Second).

Under Quebec's Automobile Insurance Act (Act), Quebec residents injured in automobile accidents are compensated by the Societe de l'Assurance du Quebec (Societe) on a no-fault basis, regardless of where the accident occurred. R.S.Q. 1995 ch. A-25, Automobile

Insurance Act § 7. Nonresidents injured in a car accident while in Quebec may also recover under the Act, but only to the extent that they are "not responsible for the accident." *Id.* § 9; see generally C. Walsh, *"A Stranger in the Promised Land?" The Non-Resident Accident Victim and the Quebec No-Fault Plan,* 37 U. New Brunswick L.J. 173, 174-80 (1988) (summarizes different treatment of residents and nonresidents). As of 1989, the maximum indemnity under the Act for the loss of income was $38,000[2] per year. R.S.Q. 1995 ch. A-25, *supra,* § 54. The maximum indemnity for pain and suffering was, in 1992, $125,000. *Id.* § 73. Separate limits exist for persons who were unemployed or attending school at the time of their injury. *Id.* §§ 23, 24. See generally J. O'Connell & C. Tenser, *North America's Most Ambitious No-Fault Law: Quebec's Auto Insurance Act,* 24 San Diego L. Rev. 917 (1987) (outlining benefits). Medical expenses are covered to the extent not already covered by a social security scheme. R.S.Q. 1995 ch. A-25, *supra,* § 83.2.

The Act eliminates the right of an automobile accident victim to bring a personal injury claim in Quebec: "Compensation under this title stands in lieu of all rights and remedies by reason of bodily injury and no action in that respect shall be admitted before any court of justice." *Id.* § 83.57. A Quebec resident who is injured outside of the province retains the right to recover damages under the law of the place of injury, and the Societe is subrogated to such rights to the extent it has paid the victim's claim. *Id.* §§ 83.59, 83.60. The Societe is also subrogated to the rights of a Quebec resident injured in Quebec by a nonresident, insofar as the Societe has compensated the Quebec resident. *Id.* § 83.61. In such a case, the nonresident is liable to the Societe to the extent of his or her responsibility as determined by normal liability rules applicable in Quebec. Finally, the Societe is subrogated to the rights of a nonresident injured in Quebec by another nonresident to the extent of the benefits paid to the injured party. *Id.*

As with other no-fault systems, the Quebec Automobile Insurance Act seeks to expedite compensation to victims of automobile accidents, reduce the amount of tort litigation in Quebec courts, and guarantee relatively low automobile insurance rates. O'Connell & Tenser, *supra,* at 927; see also *Thomas v. Hanmer,* 489 N.Y.S.2d 802, 805 (App. Div. 1985).

---

[2] This and the amount in the following sentence are expressed in Canadian dollars. As of July 21, 1997, the Federal Reserve Bank of New York reported that one dollar Canadian is worth approximately .73 U.S. dollars.

Vermont, in contrast to Quebec, retains a traditional tort system of recovery for automobile accidents. Under this scheme, motor vehicle operators compensate third parties who have been injured by the operator's negligence. More often, insurance companies provide the compensation on behalf of their policyholders and the important relationship is between the insurance company and the policyholder, rather than the victim. Traditional tort systems tend to compensate victims at higher levels than no-fault systems and seek to optimize the level of risky activity in society, reduce the occurrence and severity of injury-causing events, and provide relatively clear standards of conduct. See generally S. Stenger, *No-Fault Personal Injury Automobile Insurance: The Quebec and New York Experiences and a Proposal for California*, 14 Hastings Int'l & Comp. L. Rev. 505, 509 (1991); W. Beckham, et al., Report to the American Bar Association, *Towards a Jurisprudence of Injury: The Continuing Creation of a System of Substantive Justice in American Tort Law*, 4-1 to 4-219 (1984).

Given its policies, we conclude that Quebec has "little interest in the determination of whether its Automobile Insurance Act precludes the rights of action of an United States citizen against another United States citizen in an United States court." *Reisch v. McGuigan*, 745 F. Supp. 56, 61 (D. Mass. 1990). Pursuit of this claim will not raise insurance rates in Quebec nor hinder the administration of its courts. *Id.*; *O'Connor v. O'Connor*, 519 A.2d 13, 24 (Conn. 1986). Quebec does not seek to deter negligent conduct by a fault-based determination of liability. Indeed, Quebec may even prefer application of Vermont law to this case because the Societe does not have to serve as an intermediary, paying benefits to plaintiff and collecting from defendant's insurance carrier. See Walsh, *supra*, at 182.

Quebec's choice-of-law rules further suggest its weak interest in this type of action. See Restatement (Second) of Conflict of Laws § 145 cmt. e, illus. 1 (forum's interest in applying own law to case is indication of overall interest). The Quebec Civil Code states that, in actions involving foreign residents of the same country, the law of that country should apply:

> The obligation to make reparation for injury caused to another is governed by the law of the country where the injurious act occurred. However, if the injury appeared in another country, the law of the latter country is applicable if the person who committed the injurious act should have foreseen that the damage would occur.

> *In any case where the person who committed the injurious act and the victim have their domiciles or residences in the same country, the law of that country applies.*

Quebec Civil Code (1996) Art. 3126 (emphasis added). Specific laws such as the Automobile Insurance Act override the general law of the Quebec Civil Code only to the extent that the preemptive effect of the specific law is clearly stated.[3] *Szeto v. Federation (La), Cie d'Assurances du Canada,* 1986 R.J.Q. 218, 220 (translated from French). Although we do not attempt to decide whether the Automobile Insurance Act preempts the Code, we note that the Code's conflict rules are an indication of Quebec's weak interest in this type of action.

■ In contrast, the domicile of plaintiff and defendant, Vermont, has a strong interest in applying its law to this case. The domicile of the plaintiff has a significant interest in assuring proper compensation to the victim because the "social and economic repercussions of personal injury" will occur in plaintiff's domicile. Walsh, *supra,* at 178; see also *Thomas,* 489 N.Y.S.2d at 805 (domicile of plaintiff has significant interest in guaranteeing adequate compensation to victim); *O'Connor,* 519 A.2d at 25. Vermont also has a significant interest in deterring risky behavior by domiciliaries who cross the northern border to take advantage of Quebec's lower drinking age, and generally has an interest in deterring negligent conduct by its licensed operators, wherever that conduct may occur.

■ The needs of the international system also point to the law of the parties' domicile. See Restatement (Second) of Conflict of Laws § 6(2)(b). In the international sphere, it is generally considered appropriate to apply the laws of the domiciliary forum to tort claims that involve the residents of a single country, regardless of where the tort took place. See *Gagnon v. Lucas,* 3 S.C.R. 1022, 1060 (1994); Hague Convention on the Law Applicable to Traffic Accidents Art. 4(a), (b) (1961). Here, strict application of Quebec law to automobile

---

[3] To complicate matters further, the Supreme Court of Canada recently adopted the rule of lex loci delicti for choice-of-law issues that arise under federal common law of the provinces, resulting in a direct conflict between Canadian federal common law and Quebec civil law. See *Gagnon v. Lucas,* 3 S.C.R. 1022, 1050 (1994); W. Tetley, *New Developments in Private International Law: Tolofson v. Jensen and Gagnon v. Lucas,* 44 Am. J. Comp. L. 647, 666-67 (1996) (suggesting that Quebec conflict rules should prevail over Canadian common law).

accidents would result in preferential treatment of Quebec residents, who would reap the benefits of a traditional fault system outside of Quebec, while simultaneously denying nonresidents the full benefits of Quebec's no-fault system for accidents inside Quebec. See *Reach v. Pearson*, 860 F. Supp. 141, 144 (S.D.N.Y. 1994) (application of Quebec law would produce anomalous results); *Reisch*, 745 F. Supp. at 61 (same); *O'Connor*, 519 A.2d at 24-25 (same). Conversely, application of the law of the parties' domicile to this case would correspond with international norms and promote consistent treatment of accident victims across borders.

Thus, applying the principles of § 6 of the Restatement (Second), we conclude that the most important contacts for the issue before us are the domiciles of the parties and the place where the relationship between them is centered.[4] Both parties are domiciled in Vermont. Their relationship as long-time friends is centered in Vermont, and the trip during which the accident occurred started and ended in Vermont. We conclude that the parties' residency and relationship in Vermont outweigh the other jurisdictional contacts with Quebec, and that Vermont law applies to defendant's motion to dismiss.

*Affirmed.*

---

[4] We note that every American court that has considered the question before us under a significant-contacts test has ruled that the law of the jurisdiction in which the parties are domiciled controls to determine which compensation system applies. See *O'Connor*, 519 A.2d at 25; *Thomas*, 489 N.Y.S.2d at 807. In fact, the law of the domicile of the defendant has controlled in each case in which neither the plaintiff nor the defendant was a citizen of Quebec and the accident occurred in Quebec. See *Reisch*, 745 F. Supp. at 64; *Reach*, 860 F. Supp. at 143; *Griffith*, 929 F. Supp. at 760. Finally, the Delaware Supreme Court has ruled that the law of the domicile of the plaintiff applies in a case where the plaintiff was the victim of a hit-and-run motorist in Quebec and seeks compensation from his uninsured motorist carrier. See *Travelers Indem. Co. v. Lake*, 594 A.2d 38, 48 (Del. 1991).