### Gilbert Myers, Administrator, Estates of Adrienne Belanger Hébert, Pauline Gauthier and Patricia Giles v. Marcy Langlois and Emilien Bergeron

[721 A.2d 129]

No. 97-399

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed October 23, 1998

*John T. Leddy* of *McNeil, Leddy & Sheahan*, Burlington, for Plaintiff-Appellant.

*Patricia S. Orr* of *Wilson, Powell & Lang*, Burlington, for Defendant-Appellee.

**Skoglund, J.** Plaintiff Gilbert Myers, administrator of the estates of Adrienne Belanger Hébert, Pauline Gauthier, and Patricia Giles (decedents), appeals the superior court's grant of defendant Emilien Bergeron's summary judgment motion, which thereby dismissed the three survival and wrongful death actions against defendant Bergeron.[1] Plaintiff contends the court erred by concluding that, because Quebec law applied to the actions against defendant Bergeron, plaintiff was limited to recovering benefits paid under Quebec law and was prohibited from bringing these actions in a Vermont court. We affirm.

Defendant Bergeron and the decedents were residents of the Province of Quebec. On January 31, 1994, defendant Bergeron and the decedents left together from Clarenceville, Quebec, in defendant Bergeron's automobile. They intended to play bingo in Alburg, Vermont, and then return to their homes in Clarenceville later that evening. While driving in Alburg, defendant Bergeron allegedly made an improper left turn off Route 2. The automobile he was driving, and in which the decedents were passengers, was then struck by defendant Marcy Langlois's automobile. Defendant Langlois, a Vermont resident, was allegedly travelling at an excessive rate of speed. The decedents died of their injuries either immediately upon impact or soon thereafter. Two of the decedents' estates incurred medical bills for services provided by Vermont hospitals. Each of the decedents' next of kin applied for and received benefits available under the law of Quebec.

Plaintiff subsequently commenced separate survival and wrongful death actions, pursuant to 14 V.S.A. §§ 1451-1492, against defendants Bergeron and Langlois. The actions were consolidated for discovery. After discovery was partially complete, defendant Bergeron moved for summary judgment contending that he should be dismissed from the actions. Defendant Bergeron first argued that, based on Vermont's choice-of-law principles, Quebec law applied. He further asserted that plaintiff was precluded from maintaining the actions against him because the benefits provided to the decedents' next of kin under Quebec's no-fault compensation system for automobile accidents comprised plaintiff's exclusive remedy. In opposition, plaintiff claimed that the actions were governed by Vermont law, which has retained a fault-based compensation system for negligence

---

[1] After the court dismissed the case against defendant Emilien Bergeron, defendant Langlois settled the cases against her.

claims related to automobile accidents. The court agreed with defendant Bergeron's arguments, granted summary judgment in his favor, and dismissed him from the case. This appeal followed.

When reviewing a grant of summary judgment, we apply the same standard as the trial court. See *Madden v. Omega Optical, Inc.*, 165 Vt. 306, 309, 683 A.2d 386, 389 (1996). Here, no material facts were in dispute, and the plaintiff contests only the decision that the defendant was entitled to judgment as a matter of law. See *id.* (reiterating summary judgment standard). We therefore analyze whether the law was applied correctly. See 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2716 (3d ed. 1998) (discussing nature of summary judgment review).

## I.

Plaintiff first contends that according to Vermont's choice-of-law principles Vermont law should govern the actions. We disagree. We have adopted the test articulated in the Restatement (Second) of Conflict of Laws for determining which law applies in a given cause of action. *Miller v. White*, 167 Vt. 45, 47, 702 A.2d 392, 393 (1997).[2] Under this test, the parties' rights and liabilities are determined by the local law of the state that has the most significant relationship to the occurrence and to the parties. Restatement (Second) of Conflict of Laws § 145(1) (1971); see also *Amiot v. Ames*, 166 Vt. 288, 292, 693 A.2d 675, 677 (1997) (choice of law in tort action that implicates states or countries beyond Vermont determined by analyzing which state or country has most significant relationship to occurrence and to parties); *Jean v. Francois*, 642 N.Y.S.2d 780, 782 (Sup. Ct. 1996) (stating resolution of choice-of-law issue in tort cases involves "grouping of contacts" or "center of gravity" approach).

In applying the significant relationship test, we refer to the general principles set forth in Restatement § 6. See *Miller*, 167 Vt. at 48, 702 A.2d at 394 (citing Restatement (Second) of Conflict of Laws § 6(2)(a)-(g) (1971)). Given the jurisdictions involved in this case, the

---

[2]The facts in *Miller v. White* present nearly a mirror image of the facts in this appeal. 167 Vt. 45, 702 A.2d 392. In *Miller*, the defendant and plaintiff were both residents of Vermont. During a short trip to Quebec, they were involved in a single-car accident in an automobile owned and operated by defendant and registered in Vermont. Plaintiff brought suit in Franklin Superior Court claiming that defendant's negligence caused the accident and injured the plaintiff. On appeal, we affirmed the trial court's determination that Vermont law governed the personal injury action, basing our conclusion on application of the choice-of-law test as set forth in Restatement (Second) of Conflict of Laws. See *id.* at 53, 702 A.2d at 397.

principles include: (a) the needs of the international system; (b) the relevant policies of Vermont; (c) the relevant policies and interests of Quebec in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in determination and application of the law to be applied. Depending on the area of law involved, some § 6 factors carry more weight than others. See *id.* at 48, 702 A.2d at 394 (significant relationship test as applied to tort law stresses relevant policies of Vermont and Quebec and needs of international system); see also *Amiot*, 166 Vt. at 293, 693 A.2d at 678 (noting § 6(d)-(f) factors less important to tort law than to other fields of law). Since the actions at issue here, as in *Miller*, constitute torts, our analysis stresses the first three § 6 principles, i.e., the relevant policies of Vermont and Quebec and the needs of the international system. 167 Vt. at 48, 702 A.2d at 394.

Section 145(2) further delineates application of § 6 principles to tort cases:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145(2) (1971). Thus, to analyze the principles established in §§ 145(2) and 6(2), we first review the parties' contacts with Vermont and Quebec.

In the case before us, the accident and alleged causative conduct took place in Vermont. The decedents and defendant Bergeron, however, were all Quebec residents, and their relationship was centered in Quebec. They were friends and neighbors in Quebec who agreed to take a short day-trip together, leaving from and returning to Quebec. Moreover, defendant Bergeron's car was registered and insured under Quebec law.

Although the accident and the allegedly negligent conduct causing it occurred in Vermont, the issue in this case is not a conflict between laws that define different standards of care. Rather, the issue is one of loss allocation. In judging the respective policy interests of Quebec and Vermont, the forum state, the question therefore becomes which of the two quite different systems of recovery should prevail.

Quebec's Automobile Insurance Act (Act) provides for no-fault based compensation through a government-operated insurance system, the Societe de l'Assurance du Quebec (Societe), to Quebec residents injured in an automobile accident regardless where the accident occurred.[3] See R.S.Q. 1995 ch. A-25, Automobile Insurance Act §§ 5, 7. Through enactment of the no-fault scheme, Quebec "seeks to expedite compensation to victims of automobile accidents, reduce the amount of tort litigation in Quebec courts, and guarantee relatively low automobile insurance rates." *Miller*, 167 Vt. at 50, 702 A.2d at 395. If a Quebec resident dies as a result of an automobile accident, the Act ensures compensation for any person entitled to a death benefit. See R.S.Q. 1995 ch. A-25, Automobile Insurance Act § 6. The Quebec Act states that "[c]ompensation under this title stands in lieu of all rights and remedies by reason of bodily injury and no action in that respect shall be admitted before any court of justice," *id.* § 83.57, thereby eliminating the right of an accident victim to bring a personal injury lawsuit in Quebec. The Act further provides that "[a] person entitled to compensation under this title by reason of an accident that occurred outside Quebec may benefit by the compensation while retaining his remedy with respect to any compensation in excess thereof under the law of the place where the accident occurred." *Id.* § 83.59. Section 83.59 applies, however, only when an accident occurs outside Quebec and the lawsuit is brought in a court outside the province. See *Szeto v. Federation (La) Cie d'Assurances du Canada*, 1986 R.J.Q. 218, 220 (translated from French).

By contrast, Vermont maintains a traditional tort recovery scheme under which negligent automobile drivers, or their private insurance carriers, must compensate automobile accident victims for their injuries. To minimize risky conduct and reduce the quantity and severity of injury-causing events, traditional tort systems tend to

---

[3] Individuals who are not Quebec residents but are injured in an automobile accident while in Quebec may also recover under Quebec's Automobile Insurance Act, but only to the extent that they are "not responsible for the accident." R.S.Q. 1995 ch. A-25, Automobile Insurance Act § 9; see also *Miller v. White*, 167 Vt. at 50, 702 A.2d at 395.

provide clearer standards of conduct and higher levels of compensation than no-fault systems. *Miller*, 167 Vt. at 51, 702 A.2d at 395.

As we noted in *Miller*, in determining which law governs allocation of post-event losses, the law of the parties' jurisdiction normally controls where the tortfeasor and the victims share a common domicile. See 167 Vt. at 49, 702 A.2d at 394; see also Restatement (Second) of Conflict of Laws § 178 cmt. b (1971) (where one state is domicile of defendant, decedent, and beneficiaries, ordinarily wrongful death statute of this state should apply to determine measure of damages). Indeed, one court long ago noted:

> Limitations of damages . . . have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated, [therefore,] [t]he state of the place of the wrong has little or no interest in such compensation when none of the parties reside there.

*Reich v. Purcell*, 432 P.2d 727, 730-31 (Cal. 1967) (Traynor, C.J.). This preference for applying the law of the parties' jurisdiction rests on the recognition that the domiciliary jurisdiction has weighed the competing considerations underlying its own loss allocation rule and therefore has an interest in the parties' acceptance of both the benefits and the burdens of identifying with that jurisdiction. See *Miller*, 167 Vt. at 49, 702 A.2d at 394 (relying on *Cooney v. Osgood Mach.*, 612 N.E.2d 277, 280 (N.Y. 1993)).

Thus, while the accident and causative conduct occurred in Vermont, the parties' residency and the fact their relationship was centered in Quebec comprise the more significant contacts with respect to the issues raised in this case. See generally *Jean*, 642 N.Y.S.2d 780 (concluding Quebec compensation law applied to case involving automobile accident in New York because all parties were residents of Quebec or incorporated therein and had no significant contacts with New York); *O'Connor v. O'Connor*, 519 A.2d 13, 25-26 (Conn. 1986) (Connecticut damage law applies in case involving Connecticut defendant and plaintiff who were involved in single-car accident in Quebec); cf. Restatement (Second) of Conflict of Laws § 157(2) (1971) (where conflict of laws concerns regulation of primary conduct, e.g., standard of care, normally local law of state where injury occurred would apply). Since the choice-of-law issue presented relates to allocation of post-event losses, not regulation of conduct, the goals of Vermont's system would not be realized by permitting the

actions to go forward here. Quebec has demonstrated strong policy concerns by enacting a comprehensive automobile insurance act that provides no-fault compensation and allocates loss between Quebec residents. We therefore conclude that Quebec's significant interest in maintaining its no-fault insurance scheme outweighs the parties' contacts with Vermont.

■ Finally, in the interest of the international justice system, we will respect the policy choices made by Quebec in providing comprehensive, no-fault insurance to its residents. Compare *Gagnon v. Lucas*, 3 S.C.R. 1022, 1066 (Can. 1994) (holding, in international arena, it is generally accepted that laws of domiciliary forum apply in tort claims involving residents of one country, regardless where tort took place). And it is Quebec after all that is most directly concerned with the consequences of limiting the compensable damages for the survivors of this tragedy.

Plaintiff also argues that Vermont law should govern damages because, if Quebec law is applied and we determine that the court did not err in dismissing defendant Bergeron, defendant Langlois would be denied her statutory right to compare the negligence of defendant Bergeron to her own in assessing damages. See 12 V.S.A. § 1036. The argument is irrelevant, however, because defendant Langlois is no longer a party to the litigation.

## II.

Plaintiff next contends that, even if Quebec law is applicable, the court erred in dismissing defendant Bergeron because Quebec law does not provide the exclusive remedy for a Quebec resident who was killed or injured in an automobile accident in Vermont. Relying on § 83.59 of the Quebec Act, discussed above, and on the Canadian court's holding in *Szeto*, R.J.Q. at 220-21, plaintiff claims that Quebec law specifically recognizes the right of a Quebec resident to pursue civil remedies available in the jurisdiction where the accident occurred in addition to receiving compensation from the Societe.

■ We note that § 83.59 does not contain a per se choice-of-law provision. The section merely allows a Quebec resident to recover compensation under both the Act and the laws of the jurisdiction where the accident occurred. Nevertheless, § 83.59 requires the accident victim who files a lawsuit in another jurisdiction to submit to the other jurisdiction's choice-of-law provisions. See *Jean*, 642 N.Y.S.2d at 781. We therefore need not address defendant Bergeron's

argument that permitting the Vermont actions would give the plaintiff the opportunity for double recovery.

Finally, plaintiff argues that the Act's limited compensation is not the only available remedy since the Act requires that an automobile owner who drives in Quebec have liability insurance providing indemnity for any liability incurred by the insured for bodily injuries caused by an automobile accident outside of Quebec. See R.S.Q. 1995 ch. A-25, Automobile Insurance Act §§ 85, 88. Plaintiff therefore seeks to recover damages specifically covered by defendant Bergeron's insurance contract. Plaintiff failed to raise this claim before the trial court. Therefore, we decline to address it.[4] See *Bell v. Bell*, 162 Vt. 192, 201, 643 A.2d 846, 852 (1994) (holding that failure to raise issue at trial precludes this Court from considering it on appeal).

*Affirmed.*

---

[4] Since we decline to address plaintiff's claim concerning defendant's insurance, defendant's motion to file a copy of the insurance contract as a supplemental appendix is moot.