## Micheline M. Martineau v. Normand Guertin

[751 A.2d 776]

No. 98-181

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed March 24, 2000

*Philip C. Woodward* of *Dinse, Knapp & McAndrew, P.C.,* Burlington, and *John A. Baglini* of *Higgins & Slattery,* Providence, Rhode Island, for Plaintiffs-Appellants.

*Thomas E. McCormick* and *Thomas P. Simon* of *McCormick, Fitzpatrick, Kasper & Burchard, P.C.,* Burlington, for Defendant-Appellee.

**Morse, J.** Micheline Martineau, executrix of the estate of her deceased husband Jean Martineau, and other family members appeal the superior court's summary judgment applying Quebec law and dismissing their wrongful death suit. We conclude that the superior

court should have allowed plaintiffs' suit to proceed under Vermont law; accordingly, we reverse the court's decision and remand the matter for further proceedings.

The material facts are not in dispute. In October 1994, Jean Martineau and defendant Normand Guertin were Canadian citizens legally domiciled in the Province of Quebec. For the preceding seven years, Martineau had lived and worked as a subcontractor in Connecticut performing carpentry work for a general contractor. He had a valid "green card" that allowed him to work in the United States, but was not a year-round resident of Connecticut. Defendant did not have a green card, but worked and resided with Martineau in Connecticut at the time of the accident. The families of both men, including their wives, lived in Quebec year round.

On October 31, 1994, following a visit with their wives, Martineau and defendant left Quebec separately but rendezvoused in Swanton, Vermont, from where they intended to drive to Connecticut in Martineau's car, which had been registered and insured in Connecticut. With Martineau driving, the two men headed for Connecticut. In White River Junction, Vermont, defendant took over the driving. Shortly thereafter, defendant lost control of the car and struck a guardrail while traveling in the southbound lane of Interstate 91 near Hartford, Vermont. Martineau died at the scene of the accident.

Plaintiffs filed a wrongful death action in Chittenden Superior Court in May 1996. In response, defendant stated as one of his affirmative defenses that Quebec law governed and foreclosed the action. In March 1998, defendant filed a motion for summary judgment, contending that Quebec's no-fault system of compensation provided the exclusive remedy for plaintiffs, thus barring their wrongful death claim. The superior court granted the motion after applying the most-significant-relationship test recently adopted by this Court, ruling that Quebec law governed the parties' dispute, and that Quebec's Automobile Insurance Act's exclusive-remedy provision barred plaintiffs' wrongful death action. On appeal, plaintiffs contend that Vermont law should govern, and that, in any event, Quebec law does not bar plaintiffs' suit.

In reviewing an order granting summary judgment, we apply the same standard as the trial court: summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See *Sabia v. Neville*, 165 Vt. 515, 523, 687 A.2d 469, 474 (1996). Because no material facts are in dispute, we need determine only whether the trial court correctly applied the law to the particular facts of this case in

determining that defendant was entitled to judgment as a matter of law. See *Myers v. Langlois*, 168 Vt. 432, 434, 721 A.2d 129, 130 (1998).

This Court recently adopted the Restatement (Second) of Conflicts approach to choice-of-law questions in tort actions. See *Amiot v. Ames*, 166 Vt. 288, 292, 693 A.2d 675, 677 (1997). That approach is the result of a compromise among those who favored the more certain and predictable rules of the First Restatement and those who believed that courts should be able to weigh the most significant factors in any given case before deciding which forum's law to apply. Consequently, the Second Restatement consists of a series of narrowly worded sections establishing choice-of-law preferences for specified torts or particular issues counterbalanced by open-ended criteria that act as an escape valve in situations when applying the specific, presumptive sections would make little sense. See P. Borchers, *Courts and the Second Conflicts Restatement: Some Observations and an Empirical Note*, 56 Md. L. Rev. 1232, 1237-40 (1997).

Thus, under this approach, the first step is to ascertain whether a specific section of the Restatement governs what law should ordinarily apply to the particular action or legal issue. See L. McDougal, *Toward the Increased Use of Interstate and International Policies in Choice-of-Law Analysis in Tort Cases under the Second Restatement and Leflar's Choice-Influencing Considerations*, 70 Tul. L. Rev. 2465, 2469 (1996). If such a section exists, generally the law of a particular state is presumed to be the correct forum unless another state has a more significant interest in the litigation. See *id.* at 2469-70.

The present case is a wrongful death action. Section 175 of the Restatement provides that the "law of the state where the injury occurred determines the rights and liabilities of the parties" in an action for wrongful death unless some other state has a more significant relationship to the occurrence and the parties under the principles stated in § 6. See also Restatement (Second) of Conflicts §§ 178 (law selected by application of § 175 determines measure of damages in wrongful death action); 145(1) (generally, rights and liabilities of parties with respect to tort action are governed by law of state with most significant relationship to occurrence and parties under principles stated in § 6).

The general choice-of-law guidelines to be considered under § 6 of the Second Restatement are

(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of

other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

The first three (or perhaps four) of these general guidelines carry the greatest weight in the field of tort law. See *Miller v. White*, 167 Vt. 45, 48, 702 A.2d 392, 394 (1997); *Amiot*, 166 Vt. at 293, 693 A.2d at 678. Contacts to be taken into account in applying these principles in tort cases are "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement, *supra*, § 145(2).

■ In sum, the law of the state where the injury occurred is presumed to govern in wrongful death actions unless another state has a more significant relationship to the parties and the occurrence under the above criteria. The issue here, then, is whether Quebec's interests in resolving the parties' dispute is significant enough to overcome the presumption that Vermont law governs. See Restatement, *supra*, §§ 6, cmt. f; 175, cmt. d.

Various comments in the relevant sections of the Restatement concern circumstances similar to the instant case and thus touch upon this issue. For example, according to one comment, "where one state is the state of domicil of the defendant, the decedent and the beneficiaries, it would seem that, ordinarily at least, the wrongful death statute of this state should be applied to determine the measure of damages." *Id.* § 178, cmt. b; accord *id.* § 145, cmt. d. Another comment states that the law of the parties' common domicile should determine whether a guest passenger has a right of action against the driver for injuries suffered as the result of the latter's negligence, at least when their common domicile is the place "from which they departed on their trip and that to which they intended to return." *Id.* § 145, cmt. d. Comment c to § 145 also notes that "when the tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred, which is often the state where the plaintiff resides, may have the greater interest in the matter." *Id.*

§ 145, cmt. c (but also cautioning that factor must not be overemphasized).

We relied on these considerations in recent cases in which we determined that the place of the parties' common domicile should dictate the law governing tort suits primarily concerned with allocation of loss rather than standard of conduct. In *Miller*, we held that Vermont law governed a case involving an automobile accident that occurred in Quebec because both parties were domiciled in Vermont, their relationship centered in Vermont, they were operating a vehicle registered and insured in Vermont, and they were on a short trip that started and ended in Vermont. See 167 Vt. at 53, 702 A.2d at 397. We emphasized that because the social and economic repercussions of the injuries resulting from the accident would occur in Vermont, Vermont had a strong interest in assuring proper compensation to the victim. See *id.* at 52, 702 A.2d at 396.

The converse situation arose in *Myers*, a case in which Quebec residents were involved in an accident on a short day-trip to Vermont in a car registered and insured under Quebec law. See 168 Vt. at 435, 721 A.2d at 131. Noting that the case concerned how the estate of the decedents should be compensated rather than what standard of conduct to apply, we applied the law of Quebec, where the decedents and one of the defendants were domiciled. See *id.* at 437-38, 721 A.2d at 132. Given the nature of the issue being considered, we concluded that the parties' common residency and relationship in Quebec was more significant than the fact that the accident and causative conduct occurred in Vermont. See *id.*

The trial court essentially applied the same reasoning in this case, and defendant relies on *Miller* and *Myers* in asking this Court to uphold the trial court's decision. Some of the circumstances of this case are similar to those in *Miller* and *Myers*, particularly *Myers*. As in *Myers*, this case primarily concerns how to compensate plaintiffs for their loss rather than how to define the standard of care by which defendant will be held liable.

But there are also significant differences. Although Martineau, plaintiffs, and defendant were all *legally* domiciled in Quebec at the time of the accident, Martineau had a green card and had been living and working in Connecticut for seven years. Martineau's car was registered in Connecticut and insured by a company based in Connecticut. Defendant had also been living and working with Martineau in Connecticut at the time of the accident. Thus, the relationship between Martineau and defendant was centered in

Connecticut at the time of the accident, although apparently they had met years earlier in Quebec. Further, the two men were not on a short trip to and from Quebec, but rather were leaving Quebec to return to Connecticut for their work. Moreover, the accident occurred on route directly between their families' residence and the state in which they worked and lived, and thus did not occur under completely fortuitous circumstances. See *Amiot*, 166 Vt. at 292, 693 A.2d at 678 (significant relationship often exists in other forum "where the place of injury has little relationship to the parties"); Restatement, *supra*, § 145, cmt. e (place of injury is not significant in selecting governing law when place of injury is result of fortuitous circumstances and bears little relation to occurrence and parties).

▮ Because both Connecticut and Vermont have a traditional tort system of recovery for automobile accidents, and neither party claims that Connecticut law should apply to this dispute, the Connecticut contacts must be grouped with the Vermont contacts in determining whether the Quebec contacts are significant enough to override the presumption in favor of applying Vermont law. See Restatement, *supra*, § 145, cmt. i (stating that when contacts involving tort are located in two or more states with same law governing issue in question, "the case will be treated for choice-of-law purposes as if these contacts were grouped in a single state"); J. Meschewski, *Choice of Law in Alaska: A Survival Guide for Using the Second Restatement*, 16 Alaska L. Rev. 1, 18 (1999) (discussing grouping of contacts in three-way cases). When we group the Connecticut contacts with the Vermont situs of the accident, the significance of the parties' common *legal* domicile is considerably reduced.

As for the general guidelines contained in § 6 of the Restatement, we have considered them in some detail in other tort cases involving Quebec and Vermont, examining the policies and purposes behind the no-fault system of compensation provided by Quebec's Automobile Insurance Act, and comparing that system to Vermont's traditional tort system of compensation. See *Myers*, 168 Vt. at 436-37, 721 A.2d at 131-32; *Miller*, 167 Vt. at 49-51, 702 A.2d at 395. We recognize that Quebec has an interest in the present dispute because the social and economic consequences of the accident will be felt in Quebec, the residence of the plaintiffs. On the other hand, there is no indication that allowing plaintiffs to seek compensation in Vermont will undermine or interfere with Quebec's no-fault system of compensation.

Indeed, Quebec's interests diminish when Quebec residents are involved in accidents outside the province. While Quebec's Automo-

bile Insurance Act compensates Quebec residents on a no-fault basis regardless of whether they are injured within or outside Quebec borders, see R.S.Q. 1997 ch. A-25, Automobile Insurance Act § 7, it also explicitly allows Quebec residents injured outside the province to seek recovery under the law of the place of their injuries, *id.* § 83.59. Further, the Act mandates that insurance (1) be obtained to protect the insured owner against any liability incurred while driving the automobile of a third party, (2) provide protection for persons against any liability incurred as the result of bodily injuries caused by automobile accidents occurring outside Quebec, and (3) equal the minimum amount of liability insurance prescribed by law in the state, province, or territory of Canada or the United States where the accident occurred. See *id.* §§ 85, 88. Here, in conformity with these provisions, defendant was apparently covered under a private liability policy making the insurer liable for the minimum amount prescribed by the Canadian province or the American state where the accident occurred. Defendant does not dispute plaintiffs' contention that any liability resulting from a tort suit in Vermont would be covered directly by the private liability insurer rather than Quebec's no-fault system.

Moreover, while the expectations of the parties and the need for predictability are generally not significant factors in tort cases such as this because of the unplanned nature of accidents, see *Amiot*, 166 Vt. at 293, 693 A.2d at 678, those factors have some significance in analyzing the contract aspects of a tort case. See *Jepson v. General Cas. Co. of Wisconsin*, 513 N.W.2d 467, 470 (Minn. 1994); *Hunker v. Royal Indemnity Co.*, 204 N.W.2d 897, 903 (Wis. 1973). Here, the car involved in the accident was registered in Connecticut and insured by a Connecticut company at the time Martineau was living and working in that state. Therefore, the parties would have reasonably expected that Connecticut law, or at least American tort law, would govern any suit arising from an accident concerning the use of that car, particularly if the accident occurred in the United States.

The preceding discussion demonstrates that the circumstances of this case present a close and difficult call as to whether Quebec or Vermont law should govern the parties' dispute. One of the advantages of the Second Restatement's approach is that it has a built-in default rule for cases such as this. See *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (Restatement is easier to apply than other approaches in difficult cases because it provides default mechanism that allows courts to apply law of place where injury occurred in

situations when no state has overriding interest in litigation). Given the particular circumstances of this case, any interest Quebec may have in applying its law to the instant litigation is not significant enough to overcome the presumption that the law of Vermont — the place where the injury and wrongful conduct occurred — should govern the dispute.

*Reversed and remanded.*