STATE OF MAINE                                    SUPERIOR COURT
SOMERSET, ss                                      CIVIL ACTION
                                                  Docket No. CV-10-016

BERNARD QUIRION
and NANCY DULAC,

        Plaintiffs

v.                                                ORDER ON MOTION TO
                                                  DETERMINE LAW

BRYAN VEILLEUX
and 9048-9493 QUEBEC, INC.
d/b/a S.M. TRANSPORT,

        Defendants


        Before the court is defendants' motion for an order declaring that the laws of

Canada and the Province of Quebec apply to the determination of damages in plaintiffs'

lawsuit against the defendants.   The plaintiffs respond that damages should be

determined under Maine law.  For the following reasons, the motion is granted.

FACTS

        Plaintiff Bernard Quirion alleges that on June 24, 2008, he was driving an empty

tractor trailer truck owned by his employer, Transport Veilleux, north on Route 201 in

Moscow, Maine.  (Compl. ¶¶ 3, 8.)  At the same time, defendant Bryan Veilleux was

driving a tractor trailer owned by his employer, defendant S.M. Transport, south on

Route 201 in Moscow, Maine.  (Compl. ¶ 9.)  As the two approached each other,

defendant Veilleux lost control and his load of plywood slid off his truck and struck

plaintiff Quirion's truck.  Plaintiff Quirion was forced against the guardrail and

sustained severe and permanent injuries as a result. (Compl. ¶¶ 10-12.)


1

Plaintiff Quirion and his wife live together in Aubert Gallion, Quebec, Canada. (Compl. ¶ 2.)[1] He has never lived in Maine, owned property in Maine, paid taxes in Maine, or obtained a U.S. green card or work visa. (Defs.' Mot. 4.) Plaintiff Quirion held a Quebec trucking license and worked for various Quebec trucking companies for the 10 years preceding the accident. (Defs.' Mot. 3.) Plaintiff Quirion's employer at the time, Transport Veilleux, operated from of Saint-Georges, Quebec. (Compl. ¶ 6; Pls.' Opp. 3.)[2] Transport Veilleux's trucks are registered and insured in Quebec. (Defs.' Mot. 3.) The truck operated by plaintiff Quirion was principally garaged at the Transport Veilleux terminal in Saint-Prosper, Quebec. Id. Transport Veilleux is now bankrupt and out of business. (Pls.' Opp. 5.)

Defendant Veilleux currently lives in Saint-George Est, Quebec, and has lived within the Province of Quebec his entire life. (Defs.' Mot. 6.) He has no ties to Maine and has never held a license issued by any of the Unites States. Id. He worked for S.M. Transport between September 2005 and August 2008. Id. S.M. Transport is a Canadian trucking company with its primary place of business in Saint-Benoit-Labre, Quebec. (Defs.' Mot. 5; Compl. ¶ 6.) All its trucks are licensed in Quebec, garaged in Saint-Benoit-Labre, and insured through a Canadian insurance company. (Defs.' Mot. 5.) Most of S.M. Transport's mechanics, staff, and drivers are Quebec residents and communicate in French. (Defs.' Mot. 5-6.) The company maintains websites in both French and English. (Pls.' Opp. 9.)

---

[1] The defendants' motion rests on facts alleged in the plaintiffs' complaint and answers to interrogatories, and affidavits from defendant Veilleux, Isabelle Jacques (a controller at S.M. Transport), Jean-Pierre Nadeau (a translator), and accompanying documents.

[2] The plaintiffs' opposition rests on facts alleged in the plaintiffs' complaint and affidavits from plaintiff Quirion, two employees of Transport Veilleux, Kate Bechard and Renel Veilleux, and J. Michael Talbot, one of the plaintiffs' attorneys.

2

Both Transport Veilleux and S.M. Transport conducted regular business outside of Canada. Between April 1, 2008 and March 31, 2009, Transport Veilleux's trucks drove 334,948 kilometers in Maine, accounting for 67.6% of the trucks' total mileage for that year. (Pls.' Opp. 5.) During his employment at Transport Veilleux, plaintiff Quirion drove 115 trips and 66 of those (57.39%) were transporting cargo to various locations in Maine. (Pls.' Opp. 5-6.) He maintains that his familiarity with Maine roads was a principle reason Transport Veilleux hired him. (Pls.' Opp. 5.)

S.M. Transport conducts business across the United States and Canada. Records indicate that S.M. Transport transported cargo in all 48 contiguous states and the District of Columbia each year between April 1, 2006 and March 31, 2009. (Pls.' Opp. 8.) During that time period, 36.92% of S.M. Transport's total mileage was in Canada, and 63.08% was in the U.S., with 3.85% in Maine. (Pls.' Opp. 7.) During the two years preceding the accident, company records indicate that S.M. Transport trucks made 307 deliveries and picked up 632 loads within Maine. (Pls.' Opp. 10.)

On the day of the accident, plaintiff Quirion left Transport Veilleux's Quebec headquarters with a truckload of woodchips at about 4:15 am. (Pls.' Opp. 3.) He crossed the border at Jackman, Maine, drove south on Route 201, and unloaded at the Sappi mill in Hinckley, Maine. Id. Plaintiff Quirion then drove north on Route 201, and intended to pick up a load at West Forks, Maine. Id. Later the same morning, defendant Veilleux departed from S.M. Transport's Quebec headquarters, crossed the border at Jackman, and headed south on Route 201. (Pls.' Opp. 4.) He was heading to Winslow, Maine to make a delivery to a regular customer when the accident occurred. Id.

After the accident, plaintiff Quirion was transported to Eastern Maine Medical Center in Bangor, Maine, where he remained for 24 days. (Defs.' Mot. 3.) Since his

3

discharge, plaintiff Quirion has received all of his medical treatment and rehabilitation in Quebec. (Defs.' Mot. 4.) He applied for and received Quebec workers' compensation benefits through the Commission de la Santé et de la Sécuritié du Travail du Québec (CSST). Id. His wife signed a form on his behalf acknowledging he would be covered by the CSST program and waiving coverage by other workers' compensation systems. Id. He never received workers' compensation benefits under Maine law. Id. All of his medical bills incurred in Maine and Quebec have been paid through CSST or Canadian national health insurance.[3] Id.

On April 29, 2010, the plaintiffs filed a complaint in Somerset County Superior Court. The defendants' answer included affirmative defenses that Canadian and Quebec law should govern and thereby limit the plaintiffs' damages. (Ans. Aff. Def. ¶¶ 7-8, 10.) After an initial discovery period, defendants filed this motion to determine the applicable law.

QUEBEC LAW

Under Quebec's system of civil law, a person injured in an automobile accident during the course of his employment must seek recovery under the Act Respecting Industrial Accidents and Occupational Diseases (RIAOD) and not under Quebec's no-fault Automobile Insurance Act (AIA). R.S.Q., c. A-25 § 83.63. Under RIAOD, the worker may not institute a civil liability action against his employer for an employment injury. R.S.Q., c. A-3 § 438. The worker may, however, sue a different employer

---

[3] In his answers to interrogatories, plaintiff Quirion states: "I have received, according to CSST approximately $300,000.00 as of August 1, 2010. Some of these benefits are for compensation for my lost wages as well as payments toward permanent impairment . . . as well as medical compensation for hospitalization, rehabilitation, and other medical treatment." (Pls.' Ans. to Int. No. 10.)

4

covered by the program "to recover the amount by which the loss sustained exceeds the benefit." Id. § 441(2).[4]

Quebec's workers' compensation laws are administered by the Commission de la Santé et de la Sécuritité du Travail (CSST). R.S.Q., c. A-3 § 589. Plaintiff Quirion enrolled in the program soon after his accident and continues to receive benefits. The

---

[4] The parties disagree over the method by which a plaintiff would be able to claim any excess loss recoverable under § 441(2) and how § 83.59 of the AIA applies or affects Quebec's interests under the "most significant contacts and relationship test." Section 83.59 provides:

> A person entitled to compensation under this title by reason of an accident that occurred outside Québec may benefit by the compensation while retaining his remedy with regard to any compensation in excess thereof under the law of the place where the accident occurred.

R.S.Q., c. A-25 § 83.59.

The defendants maintain that any excess loss would be limited by Canadian case law that caps non-pecuniary damages at $100,000, adjusted for inflation. (Defs.' Mot. 16-18.) Further, the defendants argue that the Superior Court has determined that § 83.59 is subordinate to Maine's own conflict of law provisions. Defs.' Reply 4-5; Chouinard v. Bouffard, 1999 Me. Super. LEXIS 226, *11 (court characterized § 83.59 of the AIA as a species of choice of law provision, subordinate to Maine's choice of law provisions); see note 7, infra.

The plaintiffs rely on the AIA and a Canadian case to argue that a Quebec court will enforce the judgment obtained. Roy v. Boucher, 2002 CarswellQue 2222 (Can.); Pls.' Opp. 16-21. The plaintiffs also rely on a Vermont case with facts distinguishable from those in this case. Martineau v. Guertin, 751 A.2d 776, 777 (Vt. 2000). Martineau involved a determination of whether the plaintiff executrix's wrongful death action should proceed in Vermont. Id. The plaintiff's deceased husband, Martineau, and the defendant were Canadian citizens. For seven years, Martineau lived and worked in Connecticut and had a green card. Id. His car, which the defendant was driving at the time of the accident, was registered in Connecticut and insured by a company based in Connecticut. Id. The defendant worked and resided with Martineau in Connecticut. Id. The two men were driving from Quebec and through Vermont to Connecticut to work when the accident occurred. Id. In determining the choice of law issue, the Connecticut contacts and the Vermont contacts were grouped; neither party argued that Connecticut law applied. Id. at 780. The Court pointed to § 83.59 as "allow[ing] Quebec residents injured outside the province to seek recovery under the law of the place of their injuries," and determined that "given the particular circumstances of this case," Vermont Law applied. Id. at 780-781. These cases, however, do not contemplate the impact of the RIAOD, which arguably overrides the AIA and § 83.59.

Furthermore, the Law Court has not addressed the impact of § 83.59 on the choice of law issue. To the extent the section does affect the analysis, § 83.59 does not alter the conclusion that the laws of Canada and Quebec apply.

5

program provides a wide range of benefits to workers injured on the job, including income replacement indemnity, compensation for permanent impairment and bodily injury, which includes loss of enjoyment of life, professional and personal rehabilitation, and medical aid. Id. §§ 45, 83, 145. Quebec's Health Insurance Act generally covers medical expenses. R.S.Q., c. A-29. Plaintiff Quirion's medical bills incurred in Maine and Quebec have been paid by CSST or the Canadian National Insurance coverage.

CHOICE OF LAW

Because Maine is the forum state here, Maine's conflict of law rules are applied to determine whether the substantive law of Maine or Quebec will apply to this case. State Farm Mut. Auto. Ins. Co. v. Koshy, 2010 ME 44, ¶ 21, 995 A.2d 651 (citation omitted). In Beaulieu v. Beaulieu, the Law Court established that the rights and liabilities of parties to a lawsuit should be determined by the law of the forum "which has the more significant contacts or more substantial relationships to the parties and the occurrence and the more important governmental interests in the solution of the issue." 265 A.2d 610, 617 (Me. 1970).[5] In Beaulieu, the Law Court abandoned the more rigid *lex loci delecti* approach previously used, which dictated that the law of the place of the injury applied, regardless of any countervailing factors. Id. at 616.

Today, the "most significant contacts and relationships" approach, adopted by the Restatement (Second) of Conflict of Laws, continues to be used in Maine. See Flaherty v. Allstate Ins. Co., 2003 ME 72, ¶ 16, 822 A.2d 1159; Collins v. Trius, Inc., 663 A.2d 570, 572-573 (Me. 1995). Generally, "the local law of the state where the injury

---

[5] The Law Court found the merit of the new rule to be "that it accords the state having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum state to apply upon a rational basis the policy of the jurisdiction most intimately connected and concerned with the outcome of the particular litigation." Beaulieu, 265 A.2d at 617.

6

occurred determines the rights and liabilities of the parties, *unless*, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties . . . ." Flaherty, 2003 ME 72, ¶ 16, 822 A.2d 1159 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 146 (1971)). "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."[6] Collins, 663 A.2d at 573 n.5 (quoting RESTATEMENT § 145(1)). The contacts to be considered in determining which law applies include:

(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

Id. (quoting RESTATEMENT § 145(2)).

In application, the court must "isolate the issue, . . . identify the policies embraced in the laws in conflict, and finally . . . examine the contacts with the respective jurisdictions to determine which jurisdiction has a superior interest in having its policy or law applied." Id. at 573. When parties to litigation share a common domicile, Maine courts consider this a significant contact favoring application of the common jurisdiction's law. Id. This is especially true when the area of law to be applied serves

---

[6] Section 6 provides in pertinent part:
(2) The factors relevant to the choice of the applicable rule of law include
  a) the needs of the interstate and international systems,
  b) the relevant policies of the forum,
  c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  d) the protection of justified expectations,
  e) the basic policies underlying the particular field of law,
  f) certainty, predictability and uniformity of result, and
  g) ease in the determination and application of the law to be applied.
Collins, 663 A.2d at 573 n. 5 (quoting RESTATEMENT § 6(2)).

the purpose of loss-allocation, rather than conduct-regulation. Id. ("The superiority of the common domicile as the source of law governing loss-distribution issues is evident. At its core is the notion of a social contract, whereby a resident assents to casting her lot with others in accepting burdens as well as benefits of identification with a particular community . . . .").

The Beaulieu case arose from a single car accident on Massachusetts roads, in which plaintiff passenger and defendant driver were both Maine residents. Beaulieu, 265 A.2d at 611. The Law Court applied Maine law and reasoned that Maine's contacts were "quantitatively and qualitatively greater," while Massachusetts's contacts were "merely fortuitous in that the accident happened there." Id. at 616. The Court also found it significant that the subject automobile was garaged, licensed, and insured in Maine, and that the accident occurred "in the course of a temporary journey which began and was to end in Maine." Id.

In Collins, the Law Court held that Canadian law applied in a case in which a Canadian tour bus crashed in Maine while en route to New York. Collins, 663 A.2d at 573. The Canadian plaintiffs were passengers and were injured. Id. at 572. The Court found it significant that the "passengers and bus driver were all residents of Canada, the bus was registered in Canada, the passengers had purchased their tickets in Canada, and the bus trip originated in and would return to New Brunswick." Id. at 573. These factors outweighed countervailing considerations, including the fact that the bus company held an interstate permit and a Maine permit to operate motor coaches in the state. Id. at 572 n. 3.

In Chouinard v. Boufford, the Superior Court held that Canadian automobile insurance law applied to an accident on Maine roads involving a Canadian logging truck and a car driven by a Canadian student. 1999 Me. Super. LEXIS 226, **1, 11 (Aug.

8

16, 1999). The Court acknowledged that the student had made 26 trips to Maine to conduct research in recent years, and that the logging company frequently entered Maine for business purposes. Id. at **12-13. The Court found it more significant, however, that both parties to the accident were Canadian residents, and the logging company had incorporated under Canadian or Quebec law and registered its trucks in Quebec. Id. at *13. Moreover, "Quebec has demonstrated strong policy concerns by enacting a comprehensive automobile insurance act that provides no-fault compensation and allocates loss between Quebec residents." Id. at **13-14 (quoting Griffith v. White, 929 F. Supp. 755, 760 (D. Vt. 1996));[7] see Collins, 663 A.2d at 573.

Conversely, the Superior Court in Fortin v. Les Enterprises Pascal Rodrigue, Inc. held that Maine common law negligence, rather than Quebec's no-fault auto insurance law, applied to a truck accident on Maine roads between two Canadian drivers. 2002 Me. Super. LEXIS 138, **1-2, 12 (Sept. 5, 2002). In that case, the plaintiff was a Canadian citizen working for a Maine trucking company. Of two defendants, one was a Canadian trucking company doing regular business in the U.S. and Maine, and the other was a Canadian garage in the business of repairing trucks used in U.S. commerce. Id. at **1-2. Despite the parties' common domicile in Quebec, the Superior Court found Maine's interest in the outcome superior because of the parties' regular presence in this state and because "the plaintiff was working for his Maine employer, paid Maine taxes, and was covered by Maine's workers' compensation insurance program, and that he is receiving Maine workers' compensation benefits as a result of the injury he sustained, and his employer 'has a lien for the value of compensation paid on any damages

---

[7] The Chouinard court characterized § 83.59 of the AIA as a "species" of choice of law provision, subordinate to Maine's choice of law provisions. 1999 Me. Super. LEXIS 226, *11. The court applied Quebec law "other than Quebec's choice-of-law rules, which include section 83.59 . . . ." Id. at *14.

9

subsequently recovered against the 3rd person liable for the injury.'" Id. at *9 (quoting 39-A M.R.S.A. § 107).

In this case, the court applies the "most significant contacts and relationships" approach as follows. Both plaintiff Quirion and defendant Veilleux are residents of Quebec and have never lived in Maine. Both Transport Veilluex and S.M. Transport are based in Quebec and are organized under, and subject to, Quebec law. Additionally, the law at issue addresses damages, which falls squarely in the realm of loss-allocation rather than conduct-regulation.

This case is distinguishable from Beaulieu and Collins, however, in which the parties involved were only fortuitously or minimally present on the roads of the jurisdiction where the accident took place. In this case, both drivers and their employers regularly used Maine roads to conduct business. As discussed, however, in Chouinard, the Court applied Canadian law to determine damages resulting from an accident on Maine roads involving Canadian parties, in spite of the defendant's regular business presence in Maine. In that case, as here, Quebec had a strong policy interest in enforcing its no-fault auto insurance law as applied between Canadian parties. Furthermore, as in Fortin, in which the Court found the plaintiff's receipt of workers' compensation benefits in Maine to be a significant factor favoring application of Maine law, plaintiff Quirion's participation in the CSST program favors application of Quebec law. Just as plaintiff Quirion has availed himself of CSST's protections, the defendants likewise expect certain protections given their past participation in the program.

Thus, the Court considers seriously the fact that Quebec has not only established a system of loss-allocation under the CSST scheme, but the plaintiff in this case has already benefited from its coverage. Although Maine has a valid interest in regulating

10

vehicular traffic on its roads, the issue in this case centers on the allocation of loss into the future, the impact of which will be felt in Quebec, not Maine.

The entry is

> The Laws of Canada and the Province of Quebec Apply to the Determination of Damages

Date: February 3, 2012

Nancy Mills
Justice, Superior Court

11

BERNARD QUIRION - PLAINTIFF
348 40 EAST AVENUE
AUBERT GALLION GFY5B-7
Attorney for: BERNARD QUIRION
MALCOLM LYONS - RETAINED
PIERCE ATWOOD
77 WINTHROP STREET
AUGUSTA ME 04330-5552

NANCY DULAC - PLAINTIFF
348 40 EAST AVENUE
AUBERT GALLION G5Y5B-7
Attorney for: NANCY DULAC
MALCOLM LYONS - RETAINED
PIERCE ATWOOD
77 WINTHROP STREET
AUGUSTA ME 04330-5552


vs
BRYAN VEILLEUX - DEFENDANT
397 RANG 10
ST SEBASTIEN DE FRONTENAC GOY1M-O
Attorney for: BRYAN VEILLEUX
DANIEL MAWHINNEY - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

SM TRANSPORT - DEFENDANT
27 RUE INDUSTRIELLE
ST BENOIT LABRE GOM1P-O
Attorney for: SM TRANSPORT
DANIEL MAWHINNEY - RETAINED
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630

SUPERIOR COURT
SOMERSET, ss.
Docket No  SKOSC-CV-2010-00016

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: AUTO NEGLIGENCE
Filing Date: 04/29/2010

## Docket Events:
04/30/2010 FILING DOCUMENT - COMPLAINT FILED ON 04/29/2010

04/30/2010 Party(s):  BERNARD QUIRION
           ATTORNEY - RETAINED ENTERED ON 04/29/2010
           Plaintiff's Attorney: MALCOLM LYONS

           Party(s):  NANCY DULAC
           ATTORNEY - RETAINED ENTERED ON 04/29/2010
           Plaintiff's Attorney: MALCOLM LYONS

04/30/2010 Party(s):  BERNARD QUIRION,NANCY DULAC